COAST LAW GROUP, LLP
MARCO A. GONZALEZ (SBN 190832)
LIVIA B. BEAUDIN (SBN 259434)
1140 South Coast Highway 101
Encinitas, CA 92024
Ph: (760) 942-8505
Fx: (760) 942-8515
Email: marco@coastlaw.com

Attorneys for Plaintiff
COASTAL ENVIRONMENTAL RIGHTS FOUNDATION

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL ENVIRONMENTAL RIGHTS FOUNDATION, a non-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> JELD-WEN, INC, a California corporation, <br><br> Defendant. | Civil Case No.: **'17 CV 1811 LAB KSC** <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

Coastal Environmental Rights Foundation, ("CERF" or "Plaintiff"), by and through its counsel, hereby alleges:

## I.   JURISDICTION AND VENUE

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*. (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the CWA, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.      On March 14, 2017, Plaintiff issued a 60-day notice letter ("Notice Letter") to Jeld-Wen, Inc., ("Jeld-Wen" or "Defendant") regarding its violations of the Clean Water Act, and of Plaintiff's intention to file suit against Defendant. The Notice Letter was sent to the registered agent for Jeld-Wen, as required by 40 C.F.R. § 135.2(a)(1), the Facility (2760 Progress Street, Vista, California), as well as the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, San Diego Region ("Regional Board") as required by CWA, 33 U.S.C. § 1365(b)(1)(A). A true and correct copy of the Notice Letter is attached hereto as Exhibit A and incorporated herein.

3.      More than sixty days has passed since the Notice Letter was served on Defendant and the State and Federal agencies. Plaintiff is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint. (33 U.S.C. § 1365(b)(1)(B)). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA, 33 U.S.C. § 1319(g).

4.      Venue is proper in the Southern District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are

1  located within this judicial district.

2  **II.    INTRODUCTION**

3      5.      This complaint seeks relief for the Defendant's unlawful discharge of
4  pollutants into waters of the United States from its operations at 2760 Progress Street,
5  Vista, California ("Jeld-Wen Facility" or "Site"). Specifically, Defendant discharges
6  storm water runoff from the Site into City of Vista storm drains, Agua Hedionda Creek,
7  Agua Hedionda Lagoon, and ultimately the Pacific Ocean (collectively referred to as the
8  "Receiving Waters"). This complaint also seeks relief for Defendant's violations of the
9  filing, monitoring, reporting, discharge and management practice requirements, and
10  other procedural and substantive requirements of California's General Permit for
11  Discharges Associated with Industrial Activities (*National Pollution Discharge*
12  *Elimination System ("NPDES") General Permit No. CAS000001, State Water*
13  *Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order*
14  *No. 97-03-DWQ and Order No. 2014-0057-DWQ)* ("Industrial Permit"). Defendant's
15  violations of the Clean Water Act and the Industrial Permit are ongoing and continuous.

16      6.      With every rainfall event, hundreds of millions of gallons of polluted
17  rainwater, originating from industrial operations such as the Jeld-Wen Facility, flow into
18  Vista storm drain systems, Agua Hedionda Creek, Agua Hedionda Lagoon, and
19  ultimately the Pacific Ocean. This discharge of pollutants in storm water from industrial
20  activities such as the Jeld-Wen Facility contributes to the impairment of downstream
21  waters and compromises or destroys their beneficial uses.

22  **III.   PARTIES**

23      **A.    Coastal Environmental Rights Foundation**

24      7.      Plaintiff CERF is a non-profit public benefit corporation organized under
25  the laws of the State of California.

26      8.      CERF's office is located at 1140 South Coast Highway 101, Encinitas
27  California, 92024.

28      9.      CERF was founded by surfers in North San Diego County and active

3

throughout California's coastal communities. CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents. One of CERF's primary areas of advocacy is water quality protection and enhancement.

10.     Plaintiff has thousands of members who live and/or recreate in and around Agua Hedionda Creek and Agua Hedionda Lagoon and the Pacific Ocean.

11.     Plaintiff's members use and enjoy the Receiving Waters to fish, sail, boat, kayak, paddle board, surf, swim, hike, view wildlife, and engage in scientific study including monitoring activities, among other activities. Defendant discharges pollutants from the Site to the Receiving Waters and Defendant's discharges of stormwater containing pollutants impair each of these uses. Thus, Defendant's discharge of pollutants impairs Plaintiff's members' uses and enjoyment of the Receiving Waters.

12.     The interests of Plaintiff's members have been, are being, and will continue to be adversely affected by the Defendant's failure to comply with the Clean Water Act and the Industrial Permit. The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities. Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at law.

**B. The Jeld-Wen Facility Owners and/or Operators**

13.     Plaintiff is informed and believes that Jeld-Wen is a corporation organized under the laws of the State of Delaware, and is located in Vista, California.

14.     Plaintiff is informed and believes that Jeld-Wen has owned and operated the Jeld-Wen Facility located at 2760 Progress Street, Vista, California, since at least July 17, 2002.

## IV.    STATUTORY BACKGROUND

### A.    The Clean Water Act

15.     Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies

with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

16.     Section 402(p) of the CWA establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program. (33 U.S.C. § 1342(p)). States with approved NPDES permit programs are authorized by Section 402(b) to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. (33 U.S.C. § 1342).

17.     Section 402(b) of the CWA allows each state to administer its own EPA-approved permit for storm water discharges. (33 U.S.C. § 1342(b)). In California, the State Board is charged with regulating pollutants to protect California's water resources.

18.     Section 301(b) requires that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater, must achieve technology-based effluent limitations by utilizing the Best Available Technology Economically Achievable (BAT) for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology (BCT) for conventional pollutants.  See 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii).

19.     The Industrial Permit is a statewide general NPDES permit issued by the State Board pursuant to Section 402 of the CWA that regulates the discharge of pollutants from industrial sites. (33 U.S.C. § 1342).

20.     Section 505(a)(1) of the CWA provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation… or an order issued by the Administrator or a State with respect to such a standard or limitation." (33 U.S.C. § 1365(a)(1)). Jeld-Wen is a "person" within the meaning of section 502(5) of the Clean Water Act. 33 U.S.C. § 1362(5).

21.     An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a).

Complaint for Declaratory and Injunctive Relief and Civil Penalties

22.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $51,570 per day for violations occurring after November 2, 2015 and up to $37,500 per day per violation for all violations occurring after January 27, 2009 and up to November 2, 2015. (33 U.S.C. § 1319(d); Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §19.4).

23.     Section 505(d) of the Clean Water Act permits prevailing parties to recover costs, including attorneys' and experts' fees. (33 U.S.C. § 1365(d)).

**B.     California's Industrial Permit**

24.     The Industrial Permit, NPDES General Permit No. CAS000001, Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ and Order No. 2014-0057-DWQ is an NPDES permit adopted pursuant to Section 402 of the CWA, 33 U.S.C. § 1342(b) and 40 C.F.R § 123.25.  In order to discharge storm water lawfully in California, industrial dischargers must secure coverage under the Industrial Permit and comply with its terms, or obtain and comply with an individual NPDES permit. The Industrial Permit as amended pursuant to Order No. 2014-0057-DWQ became effective July 1, 2015 ("New Industrial Permit").

25.     Failure to comply with the Industrial Permit or New Industrial Permit constitutes a Clean Water Act violation. (Industrial Permit, § C.1; New Industrial Permit §XXI.A.).

26.     Discharge Prohibitions A(1) of the Industrial Permit and III.B. of the New Industrial Permit prohibit the direct or indirect discharge of materials other than storm water ("non-storm water discharges"), which are not otherwise regulated by an NPDES permit, to the waters of the United States. Discharge Prohibition A(2) of the Industrial Permit and III.C. of the New Industrial Permit prohibit storm water discharges and authorized non-storm water discharges which cause or threaten to cause pollution, contamination, or nuisance.

27.     Effluent limitations B(3) of the Industrial Permit and Sections I.D and V.A. of the New Industrial Permit require facility operators to reduce or prevent

pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.

28.     Industrial Permit Receiving Water Limitation C(1) and New Industrial Permit Receiving Water Limitation VI.B. prohibit storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impacts human health or the environment.

29.     Industrial Permit Receiving Water Limitation C(2) and New Industrial Permit Receiving Water Limitation VI.A. prohibit storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of an applicable water quality standard in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

30.     Section A(1) and Provision E(2) of the Industrial Permit require dischargers to have developed and implemented a Storm Water Pollution Prevention Plan ("SWPPP") by October 1, 1992, or prior to beginning industrial activities, that meets all the requirements of the Industrial Permit. Sections X.A. and B. of the New Industrial Permit require development and implementation of site-specific SWPPPs by July 1, 2015 or upon commencement of industrial activity.

31.     The objective of the SWPPP is to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges from the Sites, and identify and implement site-specific Best Management Practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water discharges. (Industrial Permit, Section A(2); New Industrial Permit, Section X.C.1).

32.     To ensure its effectiveness, the SWPPP must be evaluated on an annual basis, and it must be revised as necessary to ensure compliance with the Permit. (Industrial Permit, Sections A(9), (10); New Industrial Permit, Sections XA. And

X.B.1.).

33.     Sections A(3) through A(10) of the Industrial Permit and Sections X.A to X.I. of the New Industrial Permit set forth the requirements for a SWPPP.

34.     The SWPPP must include a site map showing the facility boundaries, storm water drainage areas with flow patterns, nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, areas of actual and potential pollutant contact, and areas of industrial activity. (Industrial Permit, Section A(4); New Industrial Permit, Section X.E.).

35.      Dischargers are also required to prepare and implement a monitoring and reporting program ("M&RP"). (Industrial Permit, Sections E(3), B(1); New Industrial Permit, Section XI).

36.     The objective of the M&RP is to ensure that BMPs have been adequately developed and implemented, revised as necessary, and to ensure that storm water discharges are in compliance with the Industrial Permit (up to July 1, 2015) and New Industrial Permit (July 1, 2015 and thereafter) Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations. (Industrial Permit, Section B(2); New Industrial Permit, Finding J.56).

37.     The Industrial Permit and New Industrial Permit require dischargers to conduct visual observations for the presence of unauthorized non-storm water discharges, to document the source of any discharge, and to report the presence of any discolorations, stains, odors, and floating materials in the discharge.

38.     The Industrial Permit and New Industrial Permit require dischargers to visually observe drainage areas during the wet season (October 1 - May 30) and to document the presence of any floating and suspended materials, oil and grease, discolorations, turbidity, or odor in the discharge, and the source of any pollutants.

39.     Both the Industrial Permit and New Industrial Permit require dischargers to maintain records of observations, observation dates, locations observed, and responses taken to eliminate unauthorized non-storm water discharges and to reduce or

prevent pollutants from contacting non-storm water and storm water discharges.

40.     The Industrial Permit requires dischargers to collect a sample from all discharge points during the first storm event of the wet season and during at least one other storm event of the wet season, for a total of two samples per wet season. (Industrial Permit, Section (B)(5)). The New Industrial permit requires dischargers to collect and analyze storm water samples from two storm events with the first half of each reporting year (July 1 to December 31) and two from the second half (January 1 to June 30). (New Industrial Permit, Section XI.B.2.).

41.     Dischargers must analyze each sample for pH, total suspended solids, oil and grease, and for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the facility. (Industrial Permit, Section B(5)(c); New Industrial Permit, Section XI.B.6.

42.     Dischargers must submit "Annual Reports" to the Regional Board in July of each year. (Industrial Permit, Section B(14); New Industrial Permit, Section XVI.A.).

## V.     STATEMENT OF FACTS

### A. Jeld-Wen Facility

43.     Plaintiff is informed, believes and thereon alleges the Jeld-Wen Facility is approximately 9.82 acres and belongs to Sector Y of the Industrial Permit, standard industrial classifications (SIC) code 3089, Sector, Y, Plastic Products, and Sector AA, SIC code 3442, Metal Doors, Sash, Frames, Molding, and Trim.

44.     Plaintiff is informed, believes, and thereon alleges the Jeld-Wen Facility primarily conducts vinyl and aluminum window and patio door manufacturing operations.

45.     Plaintiff is informed, believes, and thereon alleges the Jeld-Wen Facility also conducts vehicle and equipment cleaning and maintenance onsite.

46.     Plaintiff is informed, believes, and thereon alleges various industrial materials comprised of glass, vinyl, aluminum, cardboard, alcohol, sealants, paint, oil and solvents are utilized and stored onsite.

47.     Plaintiff is informed, believes, and thereon alleges particulates from operations, oil, grease, suspended solids, hazardous waste, nitrates, and metals such as aluminum, iron, copper, and zinc materials are exposed to storm water at the Jeld-Wen Facility.

48.     Plaintiff is informed, believes, and thereon alleges that storm water is discharged from one discharge point at the Facility into the City of Vista's stormwater conveyance systems or directly to Agua Hedionda Creek and Agua Hedionda Lagoon.

49.     The EPA promulgated regulations for the Section 402 NPDES permit program defining waters of the United States. (S*ee* 40 C.F.R. § 122.2). The EPA interprets waters of the United States to include not only traditionally navigable waters but also other waters, including waters tributary to navigable waters, wetlands adjacent to navigable waters, and other waters including intermittent streams that could affect interstate commerce. The CWA requires any person who discharges or proposes to discharge pollutants into waters of the United States to submit an NPDES permit application. (40 C.F.R. § 122.21).

50.     The Clean Water Act confers jurisdiction over non-navigable waters that are tributary to traditionally navigable waters where the non-navigable water at issue has a significant nexus to the navigable water. (*See Rapanos v. United States,* 547 U.S. 715 (2006).  A significant nexus is established if the "[receiving waters], either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters." (*Id.* at 780).

51.     A significant nexus is also established if waters that are tributary to navigable waters have flood control properties, including functions such as the reduction of flow, pollutant trapping, and nutrient recycling. (*Id.* at 783).

52.     Information available to Plaintiff indicates that each of the surface waters into which the Jeld-Wen Facility discharges polluted storm water are traditional navigable waters, or tributaries to such waters, such as Agua Hedionda Creek, Agua Hedionda Lagoon, and the Pacific Ocean.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

53.     Plaintiff is informed, believes, and thereon alleges the Jeld-Wen Facility's polluted discharges cause, threaten to cause, and/or contribute to the impairment of water quality in Agua Hedionda Creek and Agua Hedionda Lagoon. Elevated levels of bacteria, phosphorous, manganese, selenium, total dissolved solids, total nitrogen, and toxicity impair Agua Hedionda Creek's ability to support its beneficial uses.

54.     Water Quality Standards are pollutant concentration levels determined by the State Board and the EPA to be protective of the beneficial uses of the receiving waters.  Discharges above Water Quality Standards contribute to the impairment of the receiving waters' beneficial uses.

55.     The applicable Water Quality Standards include, but are not limited to, those set out by the State of California in the Criteria for Priority Toxic Pollutants, 40 C.F.R. § 131.38, ("California Toxics Rule" or "CTR") and in the San Diego Basin Plan. These numeric criteria are set to protect human health and the environment in the State of California. The CTR limits are the maximum concentration levels permissible to achieve health and environmental protection goals.

56.     EPA Benchmarks are the pollutant concentrations above which EPA has determined are indicative of a facility not successfully developing or implementing BMPs that meet BAT for toxic pollutants and BCT for conventional pollutants. (See Multi-Sector General Permits for Stormwater Discharges Associated with Industrial Activity (MSGP), 2015, §§6.2.1, 8.Y, Table 8.Y-1 and 8.AA, Table 8.AA-1). The benchmark values provide an appropriate level to determine whether a facility's storm water pollution prevention measures are successfully implemented. (MSGP Fact Sheet, p. 52). Failure to conduct and document corrective action and revision of control measures in response to benchmark exceedances constitutes a permit violation. (*Id.*, at p. 65).

57.     EPA has established the following sector-specific benchmark values for

Complaint for Declaratory and Injunctive Relief and Civil Penalties

Sector Y, Miscellaneous Plastic Products (SIC 3089): zinc: 0.04-0.26 mg/L[1]. (MSGP, §8.Y, Table 8.Y-1).

58.     EPA has established the following sector-specific benchmark values for Sector AA, Fabricated Metal Products (SIC 3442): aluminum: 0.75 mg/L; iron: 1.0 mg/L; zinc: 0.04-0.26 mg/L[2]; and nitrate plus nitrite nitrogen: 0.68 mg/L (MSGP, §8.AA, Table 8.AA-1).

59.     The Regional Board's Basin Plan establishes water quality objectives, implementation plans for point and nonpoint source discharges, and prohibitions, and furthers statewide plans and policies intended to preserve and enhance the beneficial uses of all waters in the San Diego region. (*See* Basin Plan at p. 1-1). The Basin Plan identifies several beneficial uses for regional waters, including for Agua Hedionda Creek and Agua Hedionda Lagoon. The Basin Plan establishes the following water quality objectives for the Carlsbad Hydrologic Unit, including the Agua Hedionda River: iron: 0.3 mg/L; pH – not less than 6.5 and not greater than 8.5; phosphorus: .1 mg/L; nitrogen: 1.0 mg/L. (See Basin Plan at Table 3-2; p. 3-13; p. 3-25).

**B.     Past and Present Industrial Activity at the Jeld-Wen Facility**

60.     Plaintiff is informed, believes, and thereon alleges that, in its Storm Water Pollution Prevention Plan ("SWPPP") and its Notice of Intent to Obtain Coverage under Industrial Permit submitted to the Regional Board, Defendant lists its primary SIC codes as 3089 for facilities primarily engaged in production of miscellaneous plastic products and 3442 for facilities primarily engaged in fabrication of metal products.

61.     Plaintiff is informed, believes, and thereon alleges that Defendant engages in vinyl and aluminum window and patio door manufacturing

62.     Plaintiff is informed, believes, and thereon alleges that Defendant engages in metal cutting, fluid drainage, bulk material loading and unloading, window coating,

---

[1] The benchmark for zinc is dependent on water hardness.

[2] The benchmark for zinc is dependent on water hardness.

and vehicle fueling, washing and maintenance.

63.     The potential pollutant sources associated with the industrial activities at the Jeld-Wen Facility include, but are not limited to: the scrap metal outdoor storage areas; outdoor galvanized tire storage areas; oil and lubricant storage; equipment and container storage areas; loading and unloading areas; maintenance areas; hazardous waste storage areas; and the on-site material handling equipment such as forklifts.

64.     Plaintiff is informed, believes, and thereon alleges that pollutants present in storm water discharged from the Jeld-Wen Facility therefore include but are not limited to: toxic metals such as iron, zinc, copper and aluminum; petroleum products including oil, fuel, grease, transmission fluids, brake fluids, hydraulic oil and diesel fuel; acids and solvents; lubricants; caustics; nitrogen; dissolved solids; total suspended solids and pH-affecting substances; hazardous waste; bacteria; and fugitive and other dust, dirt and debris.

65.     Based upon Plaintiff's investigation, Plaintiff is informed, believes, and thereon alleges Defendant stores tires, metal products, scrap metal, and other materials outside where they are exposed to storm water.

66.      Plaintiff is informed, believes, and thereon alleges that there are containers stored on-Site that are uncovered and/or uncontained.

67.     Plaintiff is informed, believes, and thereon alleges that at least one discharge point at the Jeld-Wen Facility conveys storm water pollution off the site and into area storm water conveyance systems.

68.     Plaintiff is informed, believes, and thereon alleges that the Jeld-Wen Facility lacks effective BMPs to control the flow of storm water from the Facility into storm water conveyance systems or directly into Agua Hedionda Creek and Agua Hedionda Lagoon.

69.     Suspended solids, metal particles, and other pollutants have been and continue to be conveyed from the Jeld-Wen Facility into storm drain conveyance systems.

70.     Plaintiff is informed, believes, and thereon alleges that during rain events at the Jeld-Wen Facility, storm water carries pollutants from the outdoor storage areas, bins and dumpsters; outdoor equipment and vehicles; maintenance areas; floor contaminants, equipment, and other sources directly into the storm drain conveyance systems or directly into Agua Hedionda Creek and Agua Hedionda Lagoon.

71.     Plaintiff is informed, believes, and thereon alleges that the Jeld-Wen Facility pollution control measures are ineffective in controlling the exposure of pollutant sources to storm water at the Jeld-Wen Facility.

### C.     The Jeld-Wen Facility and its Associated Discharge of Pollutants

72.     Plaintiff is informed, believes, and thereon alleges that with every significant rain event, the Jeld-Wen Facility discharges polluted storm water from the industrial activities at the facility via the City of Vista's storm drain system and into the Receiving Waters, or directly to Agua Hedionda Creek and Agua Hedionda Lagoon.

73.     Plaintiff is informed, believes, and thereon alleges that the Receiving Waters into which the Jeld-Wen Facility discharges polluted storm water are waters of the United States and therefore the Industrial Permit properly regulates discharges to those waters.

74.     Surface waters that cannot support their Beneficial Uses listed in the Basin Plan are designated as impaired water bodies pursuant to section 303(d) of the Clean Water Act. According to the 2012 and 2016 303(d) List of Impaired Water Bodies, Agua Hedionda Creek is impaired for bacteria, phosphorous, manganese, selenium, total dissolved solids, total nitrogen, and toxicity.

75.     Plaintiff is informed, believes, and thereon alleges that monitoring data indicates Agua Hedionda Creek does not meet applicable water quality standards.

76.     Because discharges from the Jeld-Wen Facility contain particulates, metals, and nitrogen, the Jeld-Wen Facility's polluted discharges cause and/or contribute to the impairment of water quality in the Receiving Waters.

77.     Plaintiff is informed, believes, and thereon alleges that the storm water

Complaint for Declaratory and Injunctive Relief and Civil Penalties

1  discharged from the Jeld-Wen Facility has exceeded the CTR Water Quality Standards

2  applicable to zinc in California. For example, Defendant's 2015-2016 monitoring data

3  indicates levels of zinc as high as 0.670 mg/L which is over five and half times the CTR

4  limit of 0.12 mg/L and the EPA Benchmark value of 0.12 mg/L.[3] (MSGP, §8.Y, Table

5  8.Y-1; Fact Sheet, p. 56).

6         78.      Plaintiff is informed, believes, and thereon alleges that the storm water

7  discharged from the Jeld-Wen Facility has exceeded the CTR Water Quality Standards

8  applicable to copper in California. For example, Defendant's monitoring data from the

9  2014-2015 monitoring period indicates levels of copper as high as 0.093 mg/L, which is

10  over seven times the CTR limit of 0.013 mg/L.

11         79.      Plaintiff is informed, believes, and thereon alleges that the storm water

12  discharged from the Jeld-Wen Facility has also exceeded the EPA Benchmark value for

13  aluminum. For example, Defendant's January 5, 2017 monitoring data indicates levels

14  of aluminum as high as 2.72 mg/L, which is more than three and a half times the EPA

15  Benchmark value for aluminum of 0.75 mg/L. (MSGP, §8.AA, Table 8.AA-1).

16         80.      Plaintiff is informed, believes, and thereon alleges that the storm water

17  discharged from the Jeld-Wen Facility has exceeded the EPA Benchmark value for iron.

18  For example, Defendant's December 16, 2016 monitoring data indicates levels of iron

19  as high as 2.64 mg/L, which is over two and a half times the EPA benchmark value for

20  iron of 1.0 mg/L and almost nine times the applicable Basin Plan objective of .3 mg/L.

21  (MSGP, §8.AA, Table 8.AA-1, Fact Sheet, p. 55).

22         81.      Plaintiff is informed, believes, and thereon alleges that Jeld-Wen's

23  historical monitoring data reveals similar or greater exceedances.

24         82.      Plaintiff is informed, believes, and thereon alleges that during every

25  significant rain event that has occurred at the Jeld-Wen Facility since March 14, 2012,

26  through the present, Defendant has discharged and continues to discharge storm water

27

28  [3] This benchmark value is hardness-dependent. Assuming the 100 mg/L water hardness range applies, the benchmark is .12 mg/L.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

from the Jeld-Wen Facility that contains pollutants at levels in violation of the prohibitions and limitations set forth in the Industrial Permit and other applicable Water Quality Standards.

83.     Plaintiff is informed, believes, and thereon alleges, from visual observations, sample results, and information available to Plaintiff, the Defendant has failed and continues to fail to develop and/or implement adequate BMPs to prevent the discharge of polluted storm water from the Jeld-Wen Facility.

84.     The inadequacy of the BMPs at the Jeld-Wen Facility is a result of the Defendant's failure to develop and implement an adequate SWPPP and companion M&RP for this Site.

85.     Storm water discharges from the Jeld-Wen Facility contain pollutant concentration levels that are above both EPA Benchmarks and applicable Water Quality Standards.

86.     Plaintiff is informed, believes, and thereon alleges that since at least March 14, 2012 through the present, Defendant has failed to develop and implement BMPs that meet the standards of BAT/BCT at the Jeld-Wen Facility in violation of Effluent Limitation B(3) of the Industrial Permit and Effluent Limitation I.D. and V.A. of the New Industrial Permit.

87.     Each day that Defendant has failed and continues to fail to implement adequate BMPs to achieve BAT/BCT constitutes a separate violation of the Industrial Permit and the CWA.

88.     Based on its investigation of the Jeld-Wen Facility, Plaintiff is informed and believes that Defendant has failed to develop and implement an adequate SWPPP since at least March 14, 2012 through the present.

89.     Each day that Defendant has failed and continues to fail to implement an adequate SWPPP constitutes a separate violation of the Industrial Permit and the CWA.

90.     Plaintiff is informed, believes, and thereon alleges that Defendant has failed to submit written reports to the Regional Board identifying additional BMPs

necessary to achieve BAT/BCT at the Jeld-Wen Facility since at least June 10, 2015, in violation of New Industrial Permit Receiving Water Limitations VI.A.-C and Special Condition XX.B.

91.     Each day that Defendant has operated the Jeld-Wen Facility without meeting this reporting requirement of the Industrial Permit constitutes a separate violation of the Industrial Permit and the CWA.

### D.    Defendant's Monitoring Program

92.     From July 1, 2015 through the present, the Jeld-Wen Facility was required to sample at least two storm events within the first half of each reporting year (July 1 to December 31) and two storm events within the second half of each reporting year (January 1 to June 30) in accordance with the sampling and analysis procedures in New Industrial Permit Section XI.B.

93.     Dischargers must analyze each sample for pH, total suspended solids, oil and grease, and for toxic chemicals and other pollutants likely to be present in significant quantities in the storm water discharged from the facility. (Industrial Permit, Section B(5)(c); New Industrial Permit, Section XI.B.6).

94.     The Jeld-Wen Facility is required to sample for iron, aluminum, zinc, and nitrogen as sector-specific parameters.  (Industrial Permit, Section B(5)(c); New Industrial Permit, Section XI.B.6).

95.     Because of the presence of copper in Jeld-Wen's discharge, it is also required to sample for copper. (New Industrial Permit, §XI.B.6.c.).

96.     Though the EPA lists phosphorous and manganese as likely pollutants associated with Sector AA facilities, Jeld-Wen does not monitor its discharge for phosphorous or manganese.

97.     All monitoring data must be uploaded to SMARTS within 30 days of obtaining all results for each sampling event. (New Industrial Permit, XI.B.11.a)

98.     Plaintiff is informed, believes, and thereon alleges that despite the extremely high levels of pollutants reported in the samples that were taken at the Jeld-

Wen Facility, the Defendant has not sampled and submitted sampling reports as required.

99.     Plaintiff is informed, believes, and thereon alleges that Defendant has not successfully sampled and reported during the 2016-2017 reporting year by failing to take a minimum of two samples during the first half of the reporting period.

100.     Information available to Plaintiff indicates that Defendant has not conducted any assessments or submitted any reports pursuant to Section XX.B of the New Industrial Permit.

## VI.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Discharges of Contaminated Storm Water in**
**Violation of the Industrial Permit's Discharge Prohibitions and**
**Receiving Water Limitations and the Clean Water Act**
**(Violations of 33 U.S.C. §§ 1311(a), 1342)**

101.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

102.     Plaintiff is informed, believes, and thereon alleges that as a result of the operations at the Jeld-Wen Facility, during every significant rain event, storm water containing pollutants harmful to fish, plant, bird life, and human health is discharged from the Jeld-Wen Facility to the Receiving Waters.

103.     Plaintiff is informed, believes, and thereon alleges that Defendant's discharges of contaminated storm water have caused, continue to cause, and threaten to cause pollution, contamination, and/or nuisance to the waters of the United States in violation of Sections III.C. and VI.C of the New Industrial Permit.

104.     Plaintiff is informed, believes, and thereon alleges that these discharges of contaminated storm water have, and continue to, adversely affect human health and the environment in violation of Section VI.B. of the New Industrial Permit.

105.     Plaintiff is informed, believes, and thereon alleges that these discharges of contaminated storm water have caused or contributed to and continue to cause or contribute to an exceedance of Water Quality Standards in violation of Discharge

Prohibition III.D. and Receiving Water Limitation VI.A. of the New Industrial Permit and Discharge Prohibition A(2) of the Industrial Permit.

106.    Plaintiff is informed, believes, and thereon alleges that from at least March 14, 2012 through the present, Defendant has discharged, and continues to discharge, contaminated storm water from the Jeld-Wen Facility to Receiving Waters in violation of the prohibitions of the Industrial Permit and New Industrial Permit.

107.    Plaintiff is informed, believes, and thereon alleges that Defendant's violations of the Industrial Permit and New Industrial Permit and the CWA are ongoing.

108.    Defendant will continue to be in violation of the Industrial Permit and New Industrial Permit requirements each day the Jeld-Wen Facility discharges contaminated storm water in violation of the Permits' prohibitions.

109.    Every day that Defendant has discharged and/or continues to discharge polluted storm water from the Jeld-Wen Facility in violation of the Permits is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

110.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from March 14, 2012 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

111.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

/./.

/./.

/./.

/./.

Complaint for Declaratory and Injunctive Relief and Civil Penalties

## SECOND CAUSE OF ACTION
**Failure to Develop and/or Implement BMPs that Achieve Compliance with Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology and Discharge in Violation of Effluent Limitations of the Industrial Permit**
**(Violations of 33 U.S.C. §§1311, 1342)**

112.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

113.    Plaintiff is informed, believes, and thereon alleges that Defendant has failed to develop and/or implement BMPs that achieve compliance with BAT/BCT requirements of the Industrial Permit, New Industrial Permit, and the CWA.

114.    Sampling of the Jeld-Wen Facility's storm water discharges as well as Plaintiff's observations of the Jeld-Wen Facility demonstrate that Defendant has not developed and has not implemented BMPs that meet the standards of BAT/BCT. Thus, Defendant is in violation of Effluent Limitations of the Industrial Permit and New Industrial Permit.

115.    Plaintiff is informed, believes, and thereon alleges that Defendant has been in daily and continuous violation of the BAT/BCT requirements of the Industrial Permit and the CWA every day since at least March 14, 2012, and the New Industrial Permit since at least July 1, 2015.

116.    The Industrial Permit and New Industrial Permit SWPPP requirements and effluent limitations require dischargers to reduce or prevent pollutants in their stormwater discharges through the implementation of measures that must achieve BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.

117.    Defendant has discharged and continues to discharge stormwater from the Jeld-Wen Facility containing levels of pollutants that do not achieve compliance with the BAT/BCT requirements during every significant rain event occurring from March 14, 2012 through the present. Defendant's failure to develop and/or implement BMPs adequate to achieve the pollutant discharge reductions attainable via BAT or BCT at the Facility is a violation of the Industrial Permit and New Industrial Permit and the CWA. (Industrial Permit, Effluent Limitation B(3); New Industrial Permit §§ I(D) (Finding

Complaint for Declaratory and Injunctive Relief and Civil Penalties

32), V(A); 33 U.S.C. § 1311(b)).

118.     Plaintiff is informed, believes, and thereon alleges that Defendant's violations of the Effluent Limitations and the CWA are ongoing.

119.     Defendant will continue to be in violation every day the Jeld-Wen Facility operates without adequately developing and/or implementing BMPs that achieve BAT/BCT to prevent or reduce pollutants associated with industrial activity in storm water discharges at the Jeld-Wen Facility.

120.     Every day that Defendant operates the Jeld-Wen Facility without adequately developing and/or implementing BMPs that achieve BAT/BCT in violation of the Permits is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

121.     By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from July 26, 2015 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

122.     An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

## THIRD CAUSE OF ACTION
**Failure to Develop and/or Implement an Adequate
Storm Water Pollution Prevention Plan
in Violation of the Industrial Permit and Clean Water Act
(Violations of 33 U.S.C. §§ 1311, 1342)**

123.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

124.     Plaintiff is informed, believes, and thereon alleges that Defendant has

failed to develop and/or implement an adequate SWPPP for the Jeld-Wen Facility that meets the requirements set out Section X of the New Industrial Permit.

125. Defendant has been in violation of the SWPPP requirements every day since at least June 25, 2015.

126. Defendant's violations of the New Industrial Permit and the CWA are ongoing.

127. Defendant will continue to be in violation of the SWPPP requirements every day the Jeld-Wen Facility operates with an inadequately developed and/or implemented SWPPP for the Jeld-Wen Facility.

128. Each day that Defendant operates the Jeld-Wen Facility without developing and/or implementing an adequate SWPPP is a separate and distinct violation of the New Industrial Permit and Section 301(a) of the CWA, 33 U.S.C. §1311(a).

129. By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 25, 2015 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

130. An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

### FOURTH CAUSE OF ACTION
**Failure to Implement an
Adequate Monitoring and Reporting Program
In Violation of the Industrial Permit and the Clean Water Act
(Violations of 33 U.S.C. §§ 1311, 1342)**

131. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

132. Plaintiff is informed, believes, and thereon alleges that Defendant has

failed to develop and/or implement an adequate M&RP for the Jeld-Wen Facility as required by Section X.I of the New Industrial Permit.

133.    Plaintiff is informed, believes, and thereon alleges that conditions at the Jeld-Wen Facility, as determined via sampling of storm water discharges from the Jeld-Wen Facility, and the annual reports submitted by Defendant all demonstrate that the Jeld-Wen Facility has not implemented an adequate M&RP that meets the requirements of the New Industrial Permit.

134.    Plaintiff is informed, believes, and thereon alleges that Defendant's M&RP fails to include sampling of all required constituents during all storm events in violation of Sections X.I. and XI.B of the New Industrial Permit.

135.    Plaintiff is informed, believes, and thereon alleges that Defendant has failed and continues to fail to identify inadequacies in its M&RP

136.    Defendant's violations of the New Industrial Permit and the CWA are ongoing.

137.    Defendant will continue to be in violation of the New Industrial Permit and the CWA each day the Jeld-Wen Facility operates with an inadequately implemented M&RP.

138.    Each day Defendant operates the Jeld-Wen Facility without implementing an adequate M&RP for the Jeld-Wen Facility is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. §1311(a).

139.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from June 12, 2015 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

140.    An action for injunctive relief under the CWA is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm

they have no plain, speedy, or adequate remedy at law.

Wherefore, Plaintiff prays judgment against Defendant as set forth hereafter.

### FIFTH CAUSE OF ACTION
### Failure to Comply with Level 1 Exceedance Response Action Requirements in Violation of the Industrial Permit

141.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

142.     Defendant prepared a Level 1 Exceedance Response Action (ERA) Plan on November 15, 2016.

143.     In its Level 1 ERA, Defendant fails to adequately identify and evaluate BMPs and SWPPP revisions necessary to prevent future numeric action level exceedances for all Level 1 parameters.

144.     On information and belief, Defendant has failed to implement BMPs detailed in its Level 1 ERA Report.

145.     Every day Defendant operates the Jeld-Wen Facility without a valid Level 1 numeric action level exceedance evaluation and report is a separate and distinct violation of the New Industrial Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

146.     Every day Defendant fails to implement BMPs detailed in the Level 1 ERA is a separate and distinct violation of the New Industrial Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

147.     Defendant has been in daily and continuous violation of the New Industrial Permit's ERA requirements every day since at least October 1, 2016.

148.     By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from October 1, 2016 to the present pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. §12.4.

149.     An action for injunctive relief under the CWA is authorized by 33 U.S.C.

§ 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

**VII.    RELIEF REQUESTED**

150.    Wherefore, Plaintiff respectfully request that this Court grant the following relief:

a.    An order declaring Defendant to have violated and to be in violation of Section 301(a) of the CWA 33 U.S.C. § 1311(a) for its unlawful discharges of pollutants from the Jeld-Wen Facility in violation of the substantive and procedural requirements of the New Industrial Permit;

b.    An order enjoining the Defendant from violating the substantive and procedural requirements of the New Industrial Permit;

c.    An order assessing civil monetary penalties of $37,500 per day per violation for each violation of the CWA at the Jeld-Wen Facility occurring through November 1, 2015, and $51,570 per violation occurring on or after November 2, 2015, as permitted by 33 U.S.C. § 1319(d) and Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4;

d.    An order requiring Defendant to take appropriate actions to restore the quality of waters impaired by its activities;

e.    An order awarding Plaintiff its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d);

/./././

/./././

/./././

/./././

/./././

/./././

Complaint for Declaratory and Injunctive Relief and Civil Penalties

1        f.     Any other relief as this Court may deem appropriate.

2  Dated: September 6, 2017

3                                         Respectfully submitted,

4                                         COAST LAW GROUP LLP

5

6                                         By: s/Livia B. Beaudin

7                                         LIVIA B. BEAUDIN

8                                         Attorneys for Plaintiff
                                       COASTAL ENVIRONMENTAL

9                                         RIGHTS FOUNDATION
                                       E-mail: livia@coastlaw.com

# EXHIBIT A

60 Day Notice Letter



1140 S. Coast Highway 101
Encinitas, CA 92024

Tel  760-942-8505
Fax  760-942-8515
www.coastlawgroup.com

**March 14, 2017**

Clint Honeycutt                              <u>**VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED**</u>
Jeld-Wen Inc
2760 Progress St
Vista, CA 92083

C T Corporation System
818 W. 7th Street STE 930
Los Angeles CA 90017

Re:     <u>Clean Water Act Notice of Intent to Sue/60-Day Notice Letter</u>
        <u>Jeld-Wen Inc's Violations of General Industrial Permit</u>

Dear Mr. Honeycutt:

Please accept this letter on behalf of the Coastal Environmental Rights Foundation (CERF) regarding Jeld-Wen Inc's ("Jeld-Wen")'s violations of the State Water Resources Control Board Water Quality Order Nos. 97-03-DWQ and 2014-0057-DWQ, Natural Pollutant Discharge Elimination System (NPDES), General Permit No. CAS000001, and Waste Discharge Requirements for Discharges of Storm Water Associated With Industrial Activities Excluding Construction Activities (Industrial Permit).[1] This letter constitutes CERF's notice of intent to sue for violations of the Clean Water Act and Industrial Permit for Jeld-Wen's facility located at 2760 and 2765 Progress Street, Vista, CA ("Facility"), as set forth in more detail below.

Section 505(b) of the Clean Water Act requires that sixty (60) days prior to the initiation of a citizen's civil lawsuit in Federal District Court under Section 505(a) of the Act, a citizen must give notice of the violations and the intent to sue to the violator, the Administrator of the U.S. Environmental Protection Agency, the Regional Administrator of the U.S. Environmental Protection Agency for the region in which the violations have occurred, the U.S. Attorney General, and the Chief Administrative Officer for the State in which the violations have occurred (33 U.S.C. § 1365(b)(1)(A)). This letter provides notice of Jeld-Wen's Clean Water Act violations and CERF's intent to sue.

I.      **Coastal Environmental Rights Foundation (CERF)**

CERF is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Encinitas, CA. CERF is dedicated to the preservation, protection, and defense of the environment, the wildlife, and the natural resources of the

---

[1] The Industrial Permit amendments, pursuant to Order No. 2014-0057-DWQ, become effective July 1, 2015. All references are to the Industrial Permit prior to modification pursuant to Order No. 2014-0057-DWQ are to the "Industrial Permit." All references to the Permit as modified by Order No. 2014-0057-DWQ are to the "New Industrial Permit."

California Coast. Members of CERF use and enjoy the waters into which pollutants from Jeld-Wen's  ongoing illegal activities are discharged, namely Agua Hedionda Creek, Agua Hedionda Lagoon, and ultimately the Pacific Ocean.

The public and members of CERF use Agua Hedionda Creek, Agua Hedionda Lagoon and the Pacific Ocean to fish, sail, boat, kayak, surf, swim, scuba dive, birdwatch, view wildlife, and to engage in scientific studies. The discharge of pollutants by the Jeld-Wen Facility affects and impairs each of these uses. Thus, the interests of CERF's members have been, are being, and will continue to be adversely affected by Jeld-Wen Owners and/or Operators' failure to comply with the Clean Water Act and the Industrial Permit.

## II.   Storm Water Pollution and the Industrial Permit

### A.   Duty to Comply

Under the Clean Water Act, the discharge of any pollutant to a water of the United States is unlawful except in compliance with certain provisions of the Clean Water Act. (See 33 U.S.C. § 1311 (a)). In California, any person who discharges storm water associated with industrial activity must comply with the terms of the Industrial Permit in order to lawfully discharge. Jeld-Wen enrolled as a discharger subject to the New Industrial Permit on June 10, 2015 with WDID No. 9 37I017377. Jeld-Wen originally enrolled under the Industrial Permit on July 17, 2002 .

Pursuant to the Industrial Permit, a facility operator must comply with all conditions of the Industrial Permit. Failure to comply with the Industrial Permit is a Clean Water Act violation. (Industrial Permit, § C.1; New Industrial Permit §XXI.A. ["Permit noncompliance constitutes a violation of the Clean Water Act and the Water Code..."]). Any non-compliance further exposes an owner/operator to an (a) enforcement action; (b) Industrial Permit termination, revocation and re-issuance, or modification; or (c) denial of a Industrial Permit renewal application. (*Id.*). As an enrollee, Jeld-Wen has a duty to comply with the Industrial Permit and is subject to all of the provisions therein.

### B.   The Jeld-Wen Facility Discharges Contaminated Storm Water in Violation of the Industrial Permit

Discharge Prohibition A(2) of the Industrial Permit and Section III.C. of the New Industrial Permit prohibit storm water discharges and authorized non-storm water discharges which cause or threaten to cause pollution, contamination, or nuisance. Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm water discharges to surface or groundwater that adversely impact human health or the environment. In addition, receiving Water Limitation C(2) prohibits storm water discharges and authorized non-storm water discharges, which cause or contribute to an exceedance of any water quality standards, such as the CTR or applicable Basin Plan water quality standards. (See New Industrial Permit, §III.D.; §VI.A.). "The California Toxics Rule ("CTR"), 40 C.F.R. 131.38, is an applicable water quality standard." (*Baykeeper v. Kramer Metals, Inc.* (C.D.Cal. 2009) 619 F.Supp.2d 914, 926). "In sum, the CTR is a water quality standard in the General Permit, Receiving Water Limitation C(2). A permittee violates Receiving Water Limitation C(2) when it 'causes or contributes to an exceedance of' such a standard, including the CTR." (*Id*. at 927).

If a discharger violates Water Quality Standards, the Industrial Permit and the Clean Water Act require that the discharger implement more stringent controls necessary to meet such Water Quality Standards.(Industrial Permit, Fact Sheet p. viii; New Industrial Permit, §XX.B.1;  33 U.S.C. § 1311(b)(l)(C)). The Jeld-Wen Owners and/or Operators have failed to comply with this requirement, routinely violating Water Quality Standards without implementing BMPs to achieve BAT/BCT or revising the Jeld-Wen SWPPP pursuant to section New Industrial Permit Section XX.B.

The monitoring data for the Jeld-Wen Facility indicates consistent, ongoing exceedances and violations of the Industrial Permit. The Jeld-Wen Owners and/or Operators have discharged and continue to discharge storm water containing pollutants at levels in violation of the above listed prohibitions and limitations during every significant rain event. Jeld-Wen's sampling data reflects numerous discharge violations. Jeld-Wen's own sampling data is not subject to impeachment. (*Baykeeper, supra*, 619 F.Supp. 2d at 927, citing *Sierra Club v. Union Oil Co. of Cal.*, (9th Cir. 1987) 813 F.2d 1480, 1492 ["when a permittee's reports indicate that the permittee has exceeded permit limitations, the permittee may not impeach its own reports by showing sampling error"]).

As reflected below, the Facility has exceeded the CTR and benchmarks during every significant rain event.

| No. | Discharge Point | Date | Parameter | Units | Result | Benchmark/ WQO | NAL |
|-----|-----------------|------|-----------|-------|--------|----------------|-----|
| 1 | 1 | 11/8/2012 | Aluminum | mg/L | 2.10 | .75[1] | .75 |
| 2 | 1 | 11/8/2012 | Zinc | mg/L | .952 | .12[2] | .26 |
| 3 | 1 | 11/8/2012 | Iron | mg/L | 2.63 | .3[3] | 1.0 |
| 4 | 2 | 11/8/2012 | Zinc | mg/L | .704 | .12[2] | .26 |
| 5 | 2 | 11/8/2012 | Iron | mg/L | 4.43 | .3[3] | 1.0 |
| 6 | 2 | 11/8/2012 | Aluminum | mg/L | 3.38 | .75[1] | .75 |
| 7 | 1 | 2/8/13 | Zinc | mg/L | .166 | .12[2] | .26 |
| 8 | 1 | 2/8/13 | Iron | mg/L | .608 | .3[3] | 1.0 |
| 9 | 2 | 2/8/13 | Zinc | mg/L | 3.2 | .12[2] | .26 |
| 10 | 2 | 2/8/13 | Iron | mg/L | 22.6 | .3[3] | 1.0 |
| 11 | 1 | 11/21/13 | Aluminum | mg/L | 2.03 | .75[1] | .75 |
| 12 | 1 | 11/21/13 | Zinc | mg/L | 2.36 | .12[2] | .26 |
| 13 | 1 | 11/21/13 | Iron | mg/L | .288 | .3[3] | 1.0 |
| 14 | 2 | 11/21/13 | Zinc | mg/L | .144 | .12[2] | .26 |
| 15 | 2 | 11/21/13 | Iron | mg/L | 1.01 | .3[3] | 1.0 |
| 16 | 1 | 12/2/14 | Aluminum | mg/L | 1.56 | .75[1] | .75 |
| 17 | 1 | 12/2/14 | Zinc | mg/L | .457 | .12[2] | .26 |
| 18 | 1 | 12/2/14 | Iron | mg/L | 2.03 | .3[3] | 1.0 |
| 19 | 2 | 12/2/14 | Zinc | mg/L | .130 | .12[2] | .26 |
| 20 | 2 | 12/2/14 | Iron | mg/L | .841 | .3[3] | 1.0 |
| 21 | Down Spout Bldg 1 | 12/2/14 | Aluminum | mg/L | 8.30 | .75[1] | .75 |

**Notice of Intent to Sue: Clean Water Act**
*Jeld-Wen Inc*
March 14, 2017
Page 4

| 22 | Down Spout Bldg 1 | 12/2/14 | Zinc | mg/L | 1.38 | .12[2] | .26 |
|---|---|---|---|---|---|---|---|
| 23 | Down Spout Bldg 1 | 12/2/14 | Iron | mg/L | 9.07 | .3[3] | 1.0 |
| 24 | Down Spout Bldg 2 | 12/2/14 | Aluminum | mg/L | 2.15 | .75[1] | .75 |
| 25 | Down Spout Bldg 2 | 12/2/14 | Zinc | mg/L | .319 | .12[2] | .26 |
| 26 | Down Spout Bldg 2 | 12/2/14 | Iron | mg/L | 2.25 | .3[3] | 1.0 |
| 27 | Trash Compactor 1 | 12/2/14 | Aluminum | mg/L | 11.6 | .75[1] | .75 |
| 28 | Trash Compactor 1 | 12/2/14 | Zinc | mg/L | .857 | .12[2] | .26 |
| 29 | Trash Compactor 1 | 12/2/14 | Copper | mg/L | .075 | .013[2] | .0332 |
| 30 | Trash Compactor 1 | 12/2/14 | Iron | mg/L | 11.6 | .3[3] | 1.0 |
| 31 | Trash Compactor 2 | 12/2/14 | Aluminum | mg/L | 2.04 | .75[1] | .75 |
| 32 | Trash Compactor 2 | 12/2/14 | Zinc | mg/L | .548 | .12[2] | .26 |
| 33 | Trash Compactor 2 | 12/2/14 | Iron | mg/L | 3.97 | .3[3] | 1.0 |
| 34 | 1 | 12/12/14 | Iron | mg/L | .347 | .3[3] | 1.0 |
| 35 | 2 | 12/12/14 | Iron | mg/L | .484 | .3[3] | 1.0 |
| 36 | Down Spout Bldg 1 | 12/12/14 | Aluminum | mg/L | 2.60 | 0.75[1] | .75 |
| 37 | Down Spout Bldg 2 | 12/12/14 | Zinc | mg/L | .234 | .12[2] | .26 |
| 38 | Down Spout Bldg 2 | 12/12/14 | Iron | mg/L | .506 | .3[3] | 1.0 |
| 39 | Trash Compactor 1 | 12/12/14 | Aluminum | mg/L | 3.64 | .75[1] | .75 |
| 40 | Trash Compactor 1 | 12/12/14 | Zinc | mg/L | .575 | .12[2] | .26 |
| 41 | Trash Compactor 1 | 12/12/14 | Copper | mg/L | .064 | .013[2] | .0332 |

Notice of Intent to Sue: Clean Water Act
*Jeld-Wen Inc*
March 14, 2017
Page 5

| 42 | Trash Compactor 1 | 12/12/14 | Iron | mg/L | 5.85 | .3$^3$ | 1.0 |
|----|----|----|----|----|----|----|----|
| 43 | Trailer | 12/12/14 | Aluminum | mg/L | 5.65 | .75$^1$ | .75 |
| 44 | Trailer | 12/12/14 | Zinc | mg/L | 1.05 | .12$^2$ | .26 |
| 45 | Trailer | 12/12/14 | Copper | mg/L | .093 | .013$^2$ | .0332 |
| 46 | Trailer | 12/12/14 | Iron | mg/L | 10.2 | .3$^3$ | 1.0 |
| 47 | Trash Bin | 12/12/14 | Iron | mg/L | .658 | .3$^3$ | 1.0 |
| 48 | Trash Bin | 12/12/14 | Zinc | mg/L | .121 | .12$^2$ | .26 |
| 49 | 1 | 11/9/15 | Nitrate + Nitrite (N) | mg/L | 1.73 | 1.0 | .68 |
| 50 | 1 | 11/9/15 | Aluminum | mg/L | 1.79 | .75$^1$ | .75 |
| 51 | 1 | 11/9/15 | Zinc | mg/L | .58 | .12$^2$ | .26 |
| 52 | 1 | 11/9/15 | Copper | mg/L | .048 | .013$^2$ | .0332 |
| 53 | 1 | 11/9/15 | Iron | mg/L | 3.07 | .3$^3$ | 1.0 |
| 54 | 2 | 11/9/15 | Nitrate + Nitrite (N) | mg/L | 1.59 | 1.0 | .68 |
| 55 | 2 | 11/9/15 | Aluminum | mg/L | .83 | .75$^1$ | .75 |
| 56 | 2 | 11/9/15 | Zinc | mg/L | .30 | .12$^2$ | .26 |
| 57 | 2 | 11/9/15 | Copper | mg/L | .026 | .013$^2$ | .0332 |
| 58 | 2 | 11/9/15 | Iron | mg/L | 1.12 | .3$^3$ | 1.0 |
| 59 | 1 | 12/11/15 | Iron | mg/L | 1.81 | .3$^3$ | 1.0 |
| 60 | 1 | 12/11/15 | Aluminum | mg/L | 1.21 | .75$^1$ | .75 |
| 61 | 1 | 12/11/15 | Zinc | mg/L | .296 | .12$^2$ | .26 |
| 62 | 1 | 12/11/15 | Copper | mg/L | .020 | .013$^2$ | .0332 |
| 63 | 2 | 12/11/15 | Nitrate + Nitrite (N) | mg/L | 85.42 | 1.0 | .68 |
| 64 | 2 | 12/11/15 | Aluminum | mg/L | 2.13 | .75$^1$ | .75 |
| 65 | 2 | 12/11/15 | Zinc | mg/L | .359 | .12$^2$ | .26 |
| 66 | 2 | 12/11/15 | Copper | mg/L | .028 | .013$^2$ | .0332 |
| 67 | 2 | 12/11/15 | Iron | mg/L | 3.83 | .3$^3$ | 1.0 |
| 68 | 1 | 2/8/16 | Iron | mg/L | 2.01 | .3$^3$ | 1.0 |
| 69 | 1 | 2/8/16 | Aluminum | mg/L | 1.63 | .75$^1$ | .75 |
| 70 | 1 | 2/8/16 | Zinc | mg/L | .325 | .12$^2$ | .26 |
| 71 | 1 | 2/8/16 | Copper | mg/L | .032 | .013$^2$ | .0332 |
| 72 | 1 | 2/8/16 | Nitrate + Nitrite (N) | mg/L | 1.09 | 1.0 | .68 |
| 73 | 2 | 2/8/16 | Iron | mg/L | .341 | .3$^3$ | 1.0 |
| 74 | 2 | 2/8/16 | Nitrate + Nitrite (N) | mg/L | 1.04 | 1.0 | .68 |
| 75 | 1 | 4/7/16 | Iron | mg/L | 1.59 | .3$^3$ | 1.0 |
| 76 | 1 | 4/7/16 | Aluminum | mg/L | 1.32 | .75$^1$ | .75 |
| 77 | 1 | 4/7/16 | Zinc | mg/L | .670 | .12$^2$ | .26 |
| 78 | 1 | 4/7/16 | Copper | mg/L | .049 | .013$^2$ | .0332 |

**Notice of Intent to Sue: Clean Water Act**
*Jeld-Wen Inc*
March 14, 2017
**Page 6**

| 79 | 1 | 4/7/16 | Nitrate + Nitrite (N) | mg/L | 2.78 | 1.0 | .68 |
|----|---|--------|-----------------------|------|------|-----|-----|
| 80 | 1 | 4/7/16 | Iron | mg/L | 3.92 | .3[3] | 1.0 |
| 81 | 1 | 4/7/16 | Aluminum | mg/L | 2.32 | .75[1] | .75 |
| 82 | 1 | 4/7/16 | Zinc | mg/L | .369 | .12[2] | .26 |
| 83 | 1 | 4/7/16 | Copper | mg/L | .033 | .013[2] | .0332 |
| 84 | 1 | 4/7/16 | Nitrate + Nitrite (N) | mg/L | .99 | 1.0 | .68 |
| 85 | 2 | 12/16/16 | Zinc | mg/L | .166 | .12[2] | .26 |
| 86 | B | 12/16/16 | Iron | mg/L | 2.25 | .3[3] | 1.0 |
| 87 | B | 12/16/16 | Aluminum | mg/L | 1.69 | .75[1] | .75 |
| 88 | B | 12/16/16 | Zinc | mg/L | .222 | .12[2] | .26 |
| 89 | C | 12/16/16 | Copper | mg/L | .014 | .013[2] | .0332 |
| 90 | C | 12/16/16 | Iron | mg/L | 2.64 | .3[3] | 1.0 |
| 91 | C | 12/16/16 | Aluminum | mg/L | 1.45 | .75[1] | .75 |
| 92 | C | 12/16/16 | Zinc | mg/L | .304 | .12[2] | .26 |
| 93 | D | 12/16/16 | Iron | mg/L | .638 | .3[3] | 1.0 |
| 94 | E | 12/16/16 | Aluminum | mg/L | 1.02 | .75[1] | .75 |
| 95 | B | 1/5/17 | Zinc | mg/L | .139 | .12[2] | .26 |
| 96 | B | 1/5/17 | Iron | mg/L | 1.91 | .3[3] | 1.0 |
| 97 | B | 1/5/17 | Aluminum | mg/L | 1.38 | .75[1] | .75 |
| 98 | C | 1/5/17 | Iron | mg/L | .756 | .3[3] | 1.0 |
| 99 | D | 1/5/17 | Copper | mg/L | .023 | .013[2] | .0332 |
| 100 | D | 1/5/17 | Iron | mg/L | 3.09 | .3[3] | 1.0 |
| 101 | D | 1/5/17 | Aluminum | mg/L | 2.72 | .75[1] | .75 |
| 102 | E | 1/5/17 | Aluminum | mg/L | 1.75 | .75[1] | .75 |
| 103 | E | 1/5/17 | Zinc | mg/L | .178 | .12[2] | .26 |
| 104 | E | 1/5/17 | Copper | mg/L | .017 | .013[2] | .0332 |
| 105 | E | 1/5/17 | Iron | mg/L | 2.00 | .3[3] | 1.0 |

[1] EPA 2015 Multi Sector General Permit Benchmark, Table 8.AA-1
[2] California Toxics Rule Limit
[3] Basin Plan Objective for San Luis Rey, Basin Plan Table 3-2

Every day the Jeld-Wen Owners and/or Operators discharged or continue to discharge polluted storm water in violation of the Discharge Prohibitions and Receiving Water Limitations of the New Industrial Permit is a separate and distinct violation of the Permit and Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).The Jeld-Wen Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since Jeld-Wen's enrollment. These violations are ongoing and will continue each day contaminated storm water is discharged in violation of the requirements of the Permit.

C.   **Failure to Develop and/or Implement BMPs that Achieve Compliance with Best Available Technology Economically Achievable and Best Conventional Pollutant Control Technology**

The New Industrial Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through implementation of the Best Available Technology Economically Achievable (BAT) for toxic pollutants[2] and Best Conventional Pollutant Control Technology (BCT) for conventional pollutants.[3] Specifically, the Permit "requires control of pollutant discharges using BAT and BCT to reduce and prevent discharges of pollutants, and any more stringent effluent limitations necessary for receiving waters to meet applicable water quality standards." (New Industrial Permit, §I.D.32; see also, §V.A.).

EPA Benchmarks are the pollutant concentrations which generally indicate whether a facility has successfully developed or implemented BMPs that meet the BAT/BCT. Discharges with pollutant concentration levels above EPA Benchmarks and/or the CTR demonstrate that a facility has failed to develop and/or implement BMPs that achieve compliance with BAT for toxic pollutants and BCT for conventional pollutants. The Facility's monitoring data demonstrates consistent exceedances of not only the CTR, but also EPA benchmarks. (See monitoring data above).

Thus, Jeld-Wen's storm water discharge sampling data demonstrates the Facility has not developed and/or implemented BMPs that meet the standards of BAT/BCT. (See *Baykeeper, supra*, 619 F.Supp. 2d at 925 ["Repeated and/or significant exceedances of the Benchmark limitations should be relevant" to the determination of meeting BAT/BCT]).

Further, information available to CERF indicates Jeld-Wen has failed to implement and/or develop BMPs that meet BAT and BCT. As noted in the Facility's SWPPP, minimal, ineffective advanced BMPs are used at the Facility. (SWPPP, pp.5-9). Notably, no filtration devices are installed to address the Facility's discharge of metals. (*Id*.). CERF's investigation also reveals extensive scrap metal and waste materials exposed (without implementation of BMPs) during rain events.

Notably, Permit Effluent Limitation V.A. is a separate requirement, independent of the iterative process triggered by exceedances of the Permit's NALs. "The NALs are not intended to serve as technology-based or water quality-based numeric effluent limitations. The NALs are not derived directly from either BAT/BCT requirements or receiving water objectives." (New Industrial Permit, §I.M.63). Thus, the NALs do not represent technology-based criteria relevant to determine whether an industrial facility has implemented BMPs that achieve BAT/BCT. Therefore, development of an Exceedance Response Action Plan pursuant to Permit Section XII neither addresses nor alleviates the aforementioned violations of Effluent Limitation V.A.

In summary, the Jeld-Wen Owners and/or Operators are seriously in violation of Section V.A. of the Industrial Permit. Every day Jeld-Wen operates with inadequately developed and/or implemented BMPs in violation of the BAT/BCT requirements is a separate and distinct violation of the Permit and Section 301(a) of the Clean Water Act. (33 U.S.C. § 1311 (a)). Therefore, Jeld-Wen has been in daily and continuous violation of the BAT/BCT requirements of the Industrial Permit every day since at least March 14, 2012, and is subject to penalties for all such

---

[2] Toxic pollutants are found at 40 CFR § 401.15 and include, but are not limited to: lead, nickel, zinc, silver, selenium, copper, and chromium.

[3] Conventional pollutants are listed at 40 CFR § 401.16 and include biological oxygen demand, total suspended solids, pH, fecal coliform, and oil and grease.

Notice of Intent to Sue: Clean Water Act
*Jeld-Wen Inc*
March 14, 2017
Page 8
_____

violations.

These violations are ongoing and Jeld-Wen will continue to be in violation every day it fails to develop and/or implement BMPs that achieve BAT/BCT to prevent or reduce pollutants associated with industrial activity in storm water discharges at the Facility.

### D.    Inadequate Storm Water Pollution Prevention Plan

One of the main requirements of the Industrial Permit (and New Industrial Permit) is the Storm Water Pollution Prevention Plan (SWPPP). (Industrial Permit §A; New Industrial Permit, Finding I.54, §X).  Jeld-Wen has not developed an adequate SWPPP as required by the New Industrial Permit.

The Jeld-Wen SWPPP dated December 2016 also fails to adequately assess the Facility's potential contribution of 303(d) listed pollutants to receiving waters. Per section X.G.2.a.ix of the New Industrial Permit, the Watkins Owners and/or Operators are required to assess the potential industrial pollutant sources to receiving waters with 303(d) listed impairments identified in Appendix 3. (New Industrial Permit, §X.G.2.a.ix). The SWPPP fails to identify any 303(d) listed constituents for Agua Hedionda Creek. However, Agua Hedionda Creek is listed as impaired for enterococcus, fecal coliform, nitrogen, phosphorus, manganese, selenium, total dissolved solids, and toxicity.

The SWPPP fails not only to assess the potential presence of any of these 303(d)-listed constituents, but also additional pollutants. (SWPPP, pp. 7-9). This is completely inadequate, especially because the EPA Fact Sheet for Sector AA specifically identifies numerous additional pollutants associated with fabricated metal products, including phosphates and manganese.[4] (New Industrial Permit, §XI.B.6.c.).

Further, the latest monitoring data includes sampling points A-F, but the Facility SWPPP only identifies sampling points A-E. The SWPPP therefore fails to identify all drainage areas and discharge locations. (New Industrial Permit, §X.E.3.b).

Lastly, despite the numerous and egregious water quality violations established by Jeld-Wen's monitoring data, the SWPPP BMPs have not been adequately updated to address such exceedances.

Every day the Jeld-Wen Owners and/or Operators operate the Facility without an adequate SWPPP constitutes a separate and distinct violation of the Industrial Permit, the New Industrial Permit, and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). The Jeld-Wen Owners and/or Operators have been in daily and continuous violation of the Industrial Permit since at least March 14, 2012. These violations are ongoing and the Jeld-Wen Owners and/or Operators will continue to be in violation every day they fail to address the SWPPP inadequacies. Thus, the Jeld-Wen Owners and/or Operators are liable for civil penalties of up to $37,500 per day for violations prior to November 2, 2015, and $51,570 per day of violations occurring after November 2, 2015. (33 U.S.C. §1319(d); 40 CFR 19.4; New Industrial Permit, §XXI.Q.1).

_____

[4] https://www.epa.gov/sites/production/files/2015-10/documents/sector_aa_fabmetal.pdf

Notice of Intent to Sue: Clean Water Act
*Jeld-Wen Inc*
March 14, 2017
Page 9
_____

### E.    Failure to Monitor

The Jeld-Wen Owners and/or Operators have failed to sample as required during the 2016-2017 wet season.

Sections B(5) and (7) of the Industrial Permit required dischargers to visually observe and collect samples of storm water discharged from all locations where storm water is discharged. Facility operators, including the Jeld-Wen Owners and/or Operators, were required to collect samples from at least two qualifying storm events each wet season, including one set of samples during the first storm event of the wet season. Required samples were to be collected by Facility operators from all discharge points and during the first hour of the storm water discharge from the Facility.

The New Industrial Permit requires dischargers to take two samples between July 1 and December 31 and two samples between January 1 and June 30. (New Industrial Permit, §XI.B.2). Nonetheless, Jeld-Wen failed to comply with these requirements. Specifically, for the December 16, 2016 sampling event, Jeld-Wen failed to monitor aluminum and iron for samples 1 and 2 and failed to monitor nitrate/nitrite for samples A-F. Jeld-Wen also failed to monitor for nitrite as N for samples 1 and 2. Likewise, Jeld-Wen failed to monitor for nitrate and nitrate for all samples collected on January 5, 2017. Jeld-Wen has further failed to sample the requisite number of qualified storm events for the first half of the 2016-2017 year.

Every day the Jeld-Wen. Owners and/or Operators failed to adequately monitor the Facility is a separate and distinct violation of the Industrial Permit, New Industrial Permit, and Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). These violations are ongoing and the Jeld-Wen Owners and/or Operators will continue to be in violation every day they fail to adequately monitor the Facility. The Jeld-Wen Owners and/or Operators are thus subject to penalties in accordance with the Industrial Permit – punishable by a minimum of $37,500 per day of violations prior to November 2, 2015, and $51,570 per day of violations occurring after November 2, 2015. (33 U.S.C. §1319(d); 40 CFR 19.4; New Industrial Permit, §XXI.Q.1).

### F.    Inadequate Implementation of BMPs and Level 1 ERA Report

The Jeld-Wen Level 1 ERA Report, dated November 15, 2016, attempts to address the numerous NAL exceedances at the Facility. However, despite the numerous, historical exceedances, the Level 1 ERA Report fails to include or incorporate any treatment control advanced BMPs. Further, it is obvious from the latest monitoring data (January 5, 2017) that the Level 1 ERA BMPs have failed to reduce the Facility's discharge of pollutants. Virtually every discharge point has numerous water quality objective exceedances

Information available to CERF also indicates Jeld-Wen has failed to implement all BMPs detailed in the Level 1 ERA report. Scrap and rusty materials remain exposed during rain events, likely contributing to the Facility's continued water quality objective exceedances.

Lastly, despite the Level 1 ERA Report admonishment that "additional investigations and monitoring is necessary to determine the source of nitrates and nitrite nitrogen," Jeld-Wen failed to monitor for nitrate or nitrite at any of its discharge locations for the January 5, 2017 sampling event. (Level 1 ERA Report, pp. 4, 6).

Every day the Jeld-Wen Owners and/or Operators fail to submit and implement an adequate Level 1 ERA Report is a separate and distinct violation of the New Industrial Permit and Section 301(a) of the Clean Water Act. (33 U.S.C. § 1311(a)). These violations are ongoing and the Jeld-Wen Owners and/or Operators will continue to be in violation every day they fail to revise, submit and implement an appropriate Level 1 ERA Report.

## G.    Unauthorized Non-Storm Water Discharges

Except as authorized by Section IV of the New Industrial Permit, permittees are prohibited from discharging materials other than storm water (non-storm water discharges) either directly or indirectly to waters of the United States. (New Industrial Permit, §III.B.; IV.A-B).

Information available to CERF indicates that unauthorized non-storm water discharges occur at the Facility due to inadequate BMP development and/or implementation necessary to prevent these discharges. For example, unauthorized non-storm water discharges occur from the Facility's irrigation, condensate, and washing and cleaning activities. (See, SWPPP, p. 12). The Jeld-Wen Owners and/or Operators conduct these activities without BMPs to prevent related non-storm water discharges. Non-storm water discharges resulting from irrigation runoff, air compressor condensate, and washing and cleaning do not qualify as authorized non-storm water discharges in Section IV.A. of the Permit without implementation of BMPs and if in violation of a Regional permit. Notably, the San Diego Regional Municipal Separate Storm Sewer System (MS4) Permit Section E.2.a. prohibits the discharge of unauthorized non-storm water as an illicit discharge. Air compressor condensate, irrigation runoff, and wash water are not listed among the authorized non-storm water discharges. (MS4 Permit, Section E.2.a.(3),(4)).

These discharge violations are ongoing and will continue until the Jeld-Wen Owners and/or Operators develop and implement BMPs that prevent prohibited non-storm water discharges or obtain separate NPDES permit coverage. Each time the Jeld-Wen Owners and/or Operators discharge prohibited non-storm water in violation of Discharge Prohibition III.B. of the Permit is a separate and distinct violation of the Storm Water Permit and section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). CERF will update the number and dates of violations when additional information becomes available. The Jeld-Wen Owners and/or Operators are subject to civil penalties for all violations of the Clean Water Act occurring since March 14, 2012.

## III.    Remedies

Upon expiration of the 60-day period, CERF will file a citizen suit under Section 505(a) of the Clean Water Act for the above-referenced violations. During the 60-day notice period, however, CERF is willing to discuss effective remedies for the violation noted in this letter. If you wish to pursue such discussions in the absence of litigation, it is suggested that you initiate those discussions immediately. If good faith negotiations are not being made, at the close of the 60-day notice period, CERF will move forward expeditiously with litigation.

Jeld-Wen must develop and implement a SWPPP which complies with all elements required in the New Industrial Permit, including the requisite monitoring, and address the

consistent, numerous, and ongoing water quality violations at the Facility. Should the Jeld-Wen Owners and/or Operators fail to do so, CERF will file an action against Jeld-Wen for its prior, current, and anticipated violations of the Clean Water Act.

CERF's action will seek all remedies available under the Clean Water Act §1365(a)(d). CERF will seek the maximum penalty available under the law which is $37,500 per day of violations prior to November 2, 2015, and $51,570 per day of violations occurring after November 2, 2015. (33 U.S.C. §1319(d); 40 CFR 19.4; New Industrial Permit, §XXI.Q.1). CERF may further seek a court order to prevent Jeld-Wen from discharging pollutants. Lastly, section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorneys' and experts' fees. CERF will seek to recover all of its costs and fees pursuant to section 505(d).

## IV.      Conclusion

CERF has retained legal counsel to represent it in this matter. Please direct all communications to Coast Law Group:

> **Marco A. Gonzalez**
> **Livia B. Beaudin**
> **COAST LAW GROUP LLP**
> **1140 S. Coast Highway 101**
> **Encinitas, CA 92024**
> **Tel: (760) 942-8505 x 102**
> **Fax: (760) 942-8515**
> **Email: marco@coastlawgroup.com**
> **livia@coastlawgroup.com**

CERF will entertain settlement discussions during the 60-day notice period. Should you wish to pursue settlement, please contact Coast Law Group LLP at your earliest convenience.

Sincerely,

**COAST LAW GROUP LLP**

**Marco A. Gonzalez**

**Livia Borak Beaudin**
Attorneys for
Coastal Environmental Rights Foundation

**Notice of Intent to Sue: Clean Water Act**
*Jeld-Wen Inc*
**March 14, 2017**
**Page 12**

CC:

| | |
|---|---|
| **Alexis Strauss**<br>**Acting Regional Administrator**<br>**U.S. EPA, Region 9**<br>**75 Hawthorne Street**<br>**San Francisco, CA, 94105** | **Dave Gibson, Executive Officer**<br>**Catherine Hagan, Staff Counsel**<br>**San Diego Regional Water Quality Control Board**<br>**2375 Northside Drive, Suite 100**<br>**San Diego, CA 92108-2700** |
| **Scott Pruitt**<br>**EPA Administrator**<br>**William Jefferson Clinton Building**<br>**1200 Pennsylvania Avenue N.W.**<br>**Washington, DC 20004** | **Thomas Howard**<br>**Executive Director**<br>**State Water Resources Control Board**<br>**P.O. Box 100**<br>**Sacramento, CA 95812–0110** |