1
2
3
4

Marco Gonzalez (SBN #190832)
Livia Borak Beaudin (SBN #259434)
COAST LAW GROUP LLP
1140 South Coast Highway 101
Encinitas, California 92024
Tel: 760.942.8505
Fax: 760.942.8515

FILED

18 JAN 16 AM 8:33

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

5
6

Attorneys for Plaintiff
COASTAL ENVIRONMENTAL RIGHTS FOUNDATION

7

8
9

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12

COASTAL ENVIRONMENTAL RIGHTS
FOUNDATION, a California non-profit
corporation,

Civil Case No. 3:17-cv-01811-LAB-KSC

**CONSENT DECREE**

13

                    Plaintiff,

        vs.

**[Dkt. 11]**

14
15

JELD-WEN, Inc., a Delaware corporation;

                    Defendant.

**(Federal Water Pollution Control Act,
33 U.S.C. §§ 1251 et seq.)**

16
17
18
19
20
21
22
23
24
25
26
27
28

DOCS 2926267.14

# CONSENT DECREE

The following Consent Decree is entered into by and between Coastal Environmental Rights Foundation ("CERF" or "Plaintiff") and JELD-WEN, INC. ("JELD-WEN"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** CERF is a non-profit organization founded by surfers in North San Diego County and active throughout California's coastal communities;

**WHEREAS,** CERF was established to aggressively advocate, including through litigation, for the protection and enhancement of coastal natural resources and the quality of life for coastal residents, and one of CERF's primary areas of advocacy is water quality protection and enhancement;

**WHEREAS,** JELD-WEN, is the operator of a vinyl and aluminum window and patio door manufacturing facility located at 2760B and 2765 Progress Street, Vista, CA, 92081, hereinafter referred to as the "Facility";

**WHEREAS,** Plaintiff's members live and/or recreate in and around Buena Creek, Agua Hedionda Creek, Agua Hedionda Lagoon, and the Pacific Ocean area waters which Plaintiff's members allege receive stormwater discharges from the Facility;

**WHEREAS,** the stormwater discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit") and Order No. 2014-0057-DWQ ("2014 Storm Water Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** on March 14, 2017, Plaintiff sent JELD-WEN, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the San Diego Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and the 2014 Storm Water Permit at the Facility;

**WHEREAS,** on September 7, 2017, Plaintiff filed a complaint against JELD-WEN in the

DOCS 2926267.14

1    United States District Court, Southern District of California (Case No. 3:17-cv-01811-LAB-KSC),

2    alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the

3    Storm Water Permits at the Facility ("Complaint");

4         **WHEREAS**, Plaintiff alleges JELD-WEN to be in violation of the substantive and procedural

5    requirements of the 1997 Storm Water Permit, the 2014 Storm Water Permit, and the Clean Water Act

6    with respect to the Facility;

7         **WHEREAS**, JELD-WEN denies all allegations in the Notice Letter and Complaint relating to

8    the Facility and its compliance with the Storm Water Permits and the Clean Water Act;

9         **WHEREAS**, Plaintiff and JELD-WEN have agreed that it is in the Settling Parties' mutual

10   interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the

11   allegations set forth in the Complaint without further proceedings;

12        **WHEREAS**, all actions taken by JELD-WEN pursuant to this Consent Decree shall be made in

13   compliance with all applicable federal and state laws and local rules and regulations.

14        **NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING**

15   **PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

16        1.    The Court has jurisdiction over the subject matter of this action pursuant to Section

17   505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

18        2.    Venue is appropriate in the Southern District of California pursuant to Section 505(c)(1)

19   of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District;

20        3.    The Complaint states claims upon which relief may be granted pursuant to Section

21   505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

22        4.    Plaintiff has standing to bring this action;

23        5.    The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of

24   this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court

25   to resolve any motion to enforce this Consent Decree.

26   **I.    OBJECTIVES**

27        **A.**    It is the express purpose of the Settling Parties entering into this Consent Decree to

28

---

Consent Decree                          2                    Civil Case No. 3:17-cv-01811-LAB-KSC

1    further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those

2    issues alleged by Plaintiff in its Complaint. In light of these objectives and as set forth fully below,

3    JELD-WEN agrees to comply with the provisions of this Consent Decree and to comply with the

4    requirements of the 2014 Storm Water Permit and all applicable provisions of the Clean Water Act.

5    Specifically, JELD-WEN agrees to comply with Receiving Water Limitation VI.A. in the 2014 Storm

6    Water Permit which requires that JELD-WEN "shall ensure that industrial storm water discharges and

7    authorized Non-Stormwater Discharges do not cause or contribute to the exceedance of any applicable

8    water quality standards in any affected receiving water," and Effluent Limitation V.A. of the 2014 Storm

9    Water Permit which requires that JELD-WEN "shall implement Best Management Practices ("BMPs")

10   that comply with the BAT/BCT requirements of the 2014 Storm Water Permit to reduce or prevent

11   discharges of pollutants in JELD-WEN's storm water discharge in a manner that reflects best industry

12   practice considering technological availability and economic practicability and achievability." JELD-

13   WEN shall develop and implement BMPs necessary to achieve compliance with BAT/BCT standards

14   and with applicable water quality standards.

15   **II.    AGENCY REVIEW AND TERM OF CONSENT DECREE**

16        **A.**    Plaintiff shall submit this Consent Decree to the United States Department of Justice and

17   the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling

18   Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five

19   (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the

20   agencies or the certified return receipts, copies of which shall be provided to JELD-WEN. In the event

21   that the Federal Agencies object to entry of this Consent Decree, or if the District Court declines to

22   approve the Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the

23   issue(s) raised by the Federal Agencies or the District Court within a reasonable amount of time.

24        **B.**    The term "Effective Date" as used in this Consent Decree shall mean the day the Court

25   enters this Consent Decree.

26        **C.**    This Consent Decree shall terminate automatically upon the earlier of the following:

27              a.    Three (3) years after the Effective Date ("Termination Date"), unless there is a

28

prior ongoing, unresolved dispute regarding JELD-WEN's compliance with this Consent Decree pending before the District Court, in which case this Consent Decree will continue in effect until such dispute is resolved;

    b.  JELD-WEN files and the San Diego Regional Water Quality Control Board accepts a Notice of Termination of coverage under the IGP;

    c.  JELD-WEN's sampling data show no exceedances of the numeric effluent limits established in Table 1 of this Consent Decree for four consecutive sampling events.

**D.**    CERF may conduct an inspection of the Facility up to forty-five (45) days prior to the Termination Date. The inspection shall be conducted according to the rules applicable to annual site inspections described below.

**E.**    Upon termination, the Parties shall have no further rights or obligations under this Consent Decree. The Parties agree to take the actions required by the District Court to formally terminate the Consent Decree.

## III.    POLLUTION CONTROL REQUIREMENTS

### A.    Storm Water Pollution Reduction Measures

1. The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage storm water discharges, and shall constitute full compliance with the 2014 Storm Water Permit in conjunction with the achievement of numeric discharge standards.

2. Commencing after the Effective Date, JELD-WEN shall engage in the following activities to achieve compliance with the 2014 Storm Water Permit and this Consent Decree:

    a.  Within thirty (30) days after the Effective Date, JELD-WEN shall:

        i.  Complete an evaluation, with the assistance of a Qualified Industrial Stormwater Professional ("QISP"), of the industrial pollutant sources at the Facility that are or may be related to the exceedance(s) of numeric effluent limits identified in the Notice Letter; and

        ii.  Identify in the evaluation the corresponding BMPs and associated revisions to

the Storm Water Pollution Prevention Plan ("SWPPP") necessary to prevent future exceedances of numeric effluent limits set forth in Table 1 of this Consent Decree.

    **iii.**    Based upon the above evaluation, JELD-WEN shall, as soon as practicable, but no later than 45 days after the Effective Date:

        **(a)**    Revise the SWPPP as necessary and implement any additional BMPs identified in the evaluation.

        **(b)**    Certify and submit to Plaintiff and to the San Diego Regional Water Quality Control Board ("RWQCB") via SMARTS:

            **1)**    A revised SWPPP reflecting additional BMPs to address each parameter that exceeded a numeric limit set forth in the Notice Letter.

3. The Settling Parties agree that the SWPPP may be modified from time to time as more fully described in this Consent Decree. In the event of a modification to the SWPPP or Facility Site Map, JELD-WEN will provide a copy of the revised exhibits to Plaintiff and the RWQCB via SMARTs.

4. In addition to the activities described in Sections III.A.2(a) and (b) above, JELD-WEN will ensure the incorporation of the following minimum BMPs, as applicable:

    a. **Non-Structural BMPs**

        **1.**    **Good Housekeeping**

            **(a)**    Observe and maintain outdoor areas where industrial activity occurs;

            **(b)**    Minimize or prevent material tracking off the Facility site;

            **(c)**    Minimize dust generated by industrial activities that may impact stormwater discharges;

            **(d)**    Cleanup areas affected by rinse and wash water;

            **(e)**    Cover stored industrial materials that can be readily mobilized by

contact with storm water;

    **(f)**     Contain stored non-solid industrial materials or wastes;

    **(g)**     Prevent improper disposal of rinse/wash waters; and

    **(h)**     Minimize flows of offsite storm water and non-storm water discharges ("NSWDs") into material handling areas on the Facility.

**2.**   **Maintenance**

    **(a)**     Identify equipment and systems that may leak or otherwise pollute outdoor areas;

    **(b)**     Observe equipment and systems to detect leaks and identify conditions that may result in the development of leaks;

    **(c)**     Establish a schedule for maintenance of identified equipment and systems; and

    **(d)**     Establish procedures for maintenance and repair of the identified equipment and systems.

**3.**   **Spill Prevention and Response Procedures**

    **(a)**     Establish or continue to implement procedures and/or controls to minimize spills and leaks;

    **(b)**     Develop and implement spill and leak response procedures to prevent industrial materials from being discharged;

    **(c)**     Clean up spills and leaks promptly;

    **(d)**     Identify and describe needed spill and leak response equipment; and

    **(e)**     Train storm water team in appropriate spill response.

**4.**   **Material Handling and Waste Management**

    **(a)**     To the maximum extent commercially reasonable, prevent outside handling of industrial materials or wastes that can be readily mobilized by contact with storm water during a storm event;

    **(b)**     Contain all stored non-solid industrial materials or wastes that can

be transported or dispersed by the wind or contact with storm water;

    **(c)**    Cover outside industrial waste disposal containers and industrial material storage containers that contain industrial waste when not in use;

    **(d)**    To the maximum extent commercially reasonable and allowed by JELD-WEN's lease, divert storm water, whether generated within the facility or by run-on to the Facility, away from all stockpiled industrial materials;

    **(e)**    Clean all spills of industrial materials or wastes;

    **(f)**    Clean any outdoor material or waste handling equipment or containers that have been contaminated by contact with industrial materials or wastes that could be mobilized during a rain event.

    **5.**    **Employee Training.** JELD-WEN's QISP will provide sufficient training to the appropriate team members assigned to perform activities required by this Consent Decree including:

    **(a)**    Preparing or acquiring training manuals;

    **(b)**    Identifying which personnel need to be trained;

    **(c)**    Providing a training schedule; and

    **(d)**    Maintaining training documentation.

    **6.**    **Quality Assurance and Record Keeping**

    **(a)**    To the extent it does not already exist, develop and implement management procedures to ensure implementation of plans;

    **(b)**    To the extent it does not already exist, develop a method of tracking and recording SWPPP implementation; and

    **(c)**    Maintain records reflecting SWPPP implementation (e.g., BMP deployment records, employee training logs, spill occurrence and clean-up records, etc.).

    **b.**  **Structural BMPs**

DOCS 2926267.14

1.   **Minimize Exposure**

    (a)    In addition to the BMPs described above, JELD-WEN shall cover industrial materials prior to any rain event, and where possible, keep any such materials in a covered area of the Facility.

    (b)    JELD-WEN will supplement existing hand sweeping in the storage and loading areas by using a riding vacuum to clean the areas weekly and prior to any storm event. A shop vacuum also may be used to remove fine debris from areas that are difficult to access and around the drains.

2.   **Management of Runoff**

    (a)    JELD-WEN will redirect runoff from roofs directly to discharge points to eliminate potential contact with materials in the industrial storage areas.

    (b)    JELD-WEN will assess the ability to install portable filters at the drains during rain events.

3.   **Non-Storm Water Discharges (NSWDs)**

    (a)    Reduce or prevent the contact of authorized NSWDs with materials or equipment that are potential sources of pollutants;

    (b)    Reduce, to the extent practicable, the flow or volume of authorized NSWDs;

    (c)    Ensure that authorized NSWDs do not contain quantities of pollutants that cause or contribute to an exceedance of water quality standards ("WQS") as set forth in the RWQCB Basin Plan; and

    (d)    Reduce or prevent discharges of pollutants in authorized NSWDs in a manner that reflects best industry practice considering technological availability and economic practicability and achievability.

4.   **Waste, Garbage, and Floatable Debris**

    (a)    Dispose of grass clippings, leaves, sticks, or other collected

vegetation as garbage, or by composting. Do not dispose of collected vegetation into waterways or storm drainage systems; and

    **(b)**    Keep waste receptacles exposed to storm water tightly closed or otherwise covered when not in use.

    **5.**    **Other**

        **(a)**    If identified in the evaluation as a needed BMP, install downspout treatment units at building downspouts that discharge to impermeable surfaces.

**B.**    **Numeric Limits**

    Numeric Limits for Discharges from the Facility. Storm water discharged from the Facility shall not contain pollutants above the levels set forth in Table 1.

## Table 1. Numeric Limits for Discharges

| Pollutant | Limit | Test Method |
|---|---|---|
| Total Recoverable Copper | 0.013 mg/L | EPA-200.8 |
| Nitrate + Nitrite Nitrogen | 0.68 mg/L (annual average) | SM 4500-NO3-E |
| Total Recoverable Zinc | 0.12 mg/L | EPA-200.8 |
| Total Recoverable Aluminum | 0.75 mg/L | EPA-200.8 |
| Total Recoverable Iron | 0.3 mg/L | EPA-200.8 |

**C.**    **Action Plan**

    1.    <u>Discharge Action Plan for Table 1 Exceedances.</u>  If JELD-WEN's monitoring reveals an exceedance of the numeric limits specified in Table 1 for any one or more constituent during a wet season, JELD-WEN shall submit a plan to Plaintiff for reducing the level of each such pollutant to its Table 1 Limit ("Discharge Action Plan"). The Discharge Action Plan for the JELD-WEN Facility shall be prepared by a QISP and must be submitted to Plaintiff within thirty (30) days of JELD-WEN's receipt of sampling data from the laboratory showing exceedances of

Table 1 Limits. JELD-WEN shall not be required to submit a new Action Plan if any exceedance occurs during the time between when JELD-WEN has submitted an Action Plan to Plaintiff and JELD-WEN has timely implemented the Action Plan and has conducted sampling during a QSE to assess the effect of the Action Plan on the quality of the discharge.

2.  Discharge Action Plan Requirements. Each Discharge Action Plan submitted shall include at a minimum:

    a.  The identification of the contaminant(s) in storm water samples found to be in excess of the numeric value(s) in Table 1;

    b.  An assessment of the source of each contaminant in storm water found to be in excess of its respective numeric value(s) in Table 1 and the extent to which each of those contaminants is associated with industrial activities;

    c.  For those contaminants associated with industrial activities, the identification of additional BMPs that shall be implemented to achieve compliance with the Table 1 Limit(s) (the "Additional BMPs"), as well as design plans for the Additional BMPs, or in the alternative, an evaluation of any Additional BMPs that would reduce or prevent an exceedance, the estimated costs of the Additional BMPs evaluated, an analysis demonstrating that the Additional BMPs needed to prevent the exceedance are not BAT/BCT and are not required to ensure discharges do not cause or contribute to violations of water quality standards, and an analysis describing the basis for the selection of BMPs implemented in lieu of the additional BMPs evaluated but not implemented; and

    d.  A time schedule committing JELD-WEN to implement Additional BMPs as soon as possible, but in no case more than forty-five (45) days after Plaintiff's approval of the Additional BMPs or later than September 30 (prior to the next Wet Season). However JELD-WEN shall be entitled to a single time extension for up to three (3) months upon the submission of the following information with the Discharge Action Plan: (1) an explanation of why it would be infeasible to implement the Discharge Action Plan by September 30 despite the exercise of due diligence and good faith effort, (2) a schedule

DOCS 2926267.14

and detailed description of the necessary tasks to be performed, and (3) a description of any additional temporary BMPs that will be implemented while permanent Additional BMPs are being constructed.

3.  Action Plan Review. Plaintiff shall have thirty (30) days upon receipt of a Discharge Action Plan to provide JELD-WEN with comments. If comments are not provided within the 30-day period, or such time for providing comments is not extended by mutual agreement of the Parties, the Discharge Action Plan shall be deemed accepted. If comments are provided, within fourteen (14) days from the date Plaintiff's comments are received, JELD-WEN shall either accept the comments or provide Plaintiff with a written explanation prepared by a QISP identifying JELD-WEN's objection(s). Any disputes as to the adequacy of any Discharge Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree.

4.  JELD-WEN shall diligently submit applications for and pursue all required local agency permits and/or approvals for the BMPs included in any approved Discharge Action Plan. JELD-WEN shall further diligently pursue the procurement of contractors, labor, and materials necessary to complete all such BMPs by the deadline for implementing the Discharge Action Plan, and shall use its best efforts to meet the deadline.

**D.    Sampling at the Facility.**

1.  JELD-WEN shall install a rain gauge capable of recording rainfall to 0.1 inches at the Facility within thirty (30) days of the Effective Date. JELD-WEN shall maintain the rain gauge in accordance with the manufacturers' recommendations, maintain records of all rain data collected (which shall be read at the close of the business day or at the cessation of the day's rain, whichever is earlier), and provide such rain gauge data to Plaintiff at the end of each calendar quarter during the Wet Season (October 1 – May 30) for the term of this Consent Decree.

2.  Although JELD-WEN's operations do not generate any of the 303(d) listed parameters identified below, for purposes of this Consent Decree, JELD-WEN agrees to monitor all of its discharge points for the following 303(d)-listed parameters during the first QSE of the 2017-2018 reporting year: (1) phosphorous; (2) manganese; and (3) selenium.

DOCS 2926267.14

      a.  If the results of the monitoring establish an exceedance of water quality objectives for any of the aforementioned parameters, JELD-WEN shall prepare a Discharge Action Plan for such parameter in accordance with Section III.C above.

      b.  JELD-WEN shall not be required to conduct any further storm water discharge monitoring for any parameters which are determined not to exceed a water quality objective in the Facility's storm water discharge as a result of the aforementioned monitoring.

3.  Within 30 days after the Effective Date, JELD-WEN shall review and revise as necessary its plan for monitoring all storm water and non-storm water discharges from the Facility ("Monitoring Plan") to meet the requirements of this Consent Decree and Section XI of the 2014 Storm Water Permit, and shall incorporate the Monitoring Plan into its SWPPP.

4.  During the life of this Consent Decree, JELD-WEN shall collect samples of any Qualifying Storm Event ("QSE") required to be sampled under the 2014 Storm Water Permit or the then-effective Industrial Storm Water Permit in conformity with its Monitoring Plan. For purposes of this Consent Decree, this includes storm water discharges occurring during the Facility's operating hours or, for storm water stored onsite prior to discharge, whenever storm water is released off site, whether during operating hours or not. Should JELD-WEN demonstrate full compliance with all of the discharge limitations in Table 1 for four (4) consecutive QSEs, this Consent Decree shall terminate, and JELD-WEN will be required to comply with the terms of the 2014 Storm Water Permit or of the then-effective Industrial Storm Water Permit.

5.  JELD-WEN shall incorporate in the Monitoring Plan the analytical methods described in Section XI.B of the 2014 Storm Water Permit.

6.  JELD-WEN shall request that results of all sample analyses required by this Consent Decree be reported to it within fifteen (15) business days of laboratory receipt of the sample.

7.  JELD-WEN shall provide the complete laboratory results of all samples collected as required by this Consent Decree to Plaintiff concurrently with the posting of same on SMARTS or no later than fifteen (15) business days from receipt of the sample results from the laboratory, whichever

1    is sooner.

**E.    Visual Observations**

1.  During the life of this Consent Decree, JELD-WEN shall conduct visual observations during normal scheduled Facility operating hours during every rain event that produces a discharge at any discharge points at the Facility pursuant to Section XI.A of the 2014 Storm Water Permit and as more fully described in the JELD-WEN SWPPP.

**F.    Monitoring and Reporting Program Revisions**

1.  JELD-WEN shall submit a written report to Plaintiff on June 15th of each year after the Effective Date and prior to the Termination Date that contains the following information:

    a.  A review of all sampling, visual observations, and inspection records conducted during the previous reporting year;

    b.  An inspection of all areas of industrial activity and associated potential pollutant sources for evidence of, or the potential for, pollutants entering the storm water conveyance system;

    c.  An inspection of all drainage areas previously identified as having no exposure to industrial activities and materials in accordance with the definitions in Section XVII of the Permit;

    d.  An inspection of the BMPs identified in the SWPPP;

    e.  An inspection of any structural BMPs identified in the SWPPP;

    f.  A review and effectiveness assessment of all BMPs identified in the SWPPP for each area of industrial activity and associated potential pollutant sources to determine if the BMPs are properly designed, implemented, and are effective in reducing and preventing pollutants in industrial storm water discharges and authorized NSWDs;

    g.  A compliance checklist that indicates whether JELD-WEN complies with and has addressed all applicable requirements of the 2014 Storm Water Permit;

    h.  An explanation for any non-compliance of requirements within the reporting year, as indicated in the compliance checklist;

i.  An identification, including page numbers and/or sections, of all revisions made to the SWPPP within the reporting year;

j.  The date(s) of the Annual Evaluation; and

k.  An appendix including the following information:

    **1.**  All rain gauge data for the Wet Season; and

    **2.**  Records of all storm water samples collected at the Facility for QSEs.

**G.  Storm Water Pollution Prevention Plan Revisions**

1.  <u>Additional SWPPP Revisions</u>. JELD-WEN shall engage a QISP to revise the SWPPP for the Facility if there are any changes in the Facility's operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to any Discharge Action Plan. JELD-WEN shall submit any SWPPP revisions made pursuant to the requirements of this paragraph to Plaintiff for review and comment within ten (10) business days of the SWPPP revision. Plaintiff will provide comments, if any, to JELD-WEN within thirty (30) days of receipt of such revised SWPPP, and if no comments are provided by that time, the revisions will be considered acceptable. If Plaintiff provides comments in a timely manner, JELD-WEN shall incorporate Plaintiff's recommendations into any revised SWPPP, or shall justify in a writing prepared by a QISP and provided to Plaintiff within thirty (30) days of the receipt of the comments the reasons why JELD-WEN disagrees with Plaintiff's recommendation(s). Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out below.

**H.  Employee Training**

1.  Within thirty (30) days of the Effective Date of this Consent Decree, JELD-WEN shall revise as needed its existing employee training program and shall ensure its training program is in compliance with Section X.H.1.f., X.H.1.g., and IX of the 2014 Storm Water Permit ("Training Program"). At a minimum, the Training Program shall include at least the following:

a.  <u>Language</u>. JELD-WEN shall conduct the Training Program in the language or

DOCS 2926267.14

languages in which all employees participating in the Training Program are fluent.

  b.  <u>Non-Stormwater Discharges</u>. JELD-WEN shall train all designated employees on the 2014 Storm Water Permit's prohibition of NSWDs, so that employees know what NSWDs are, that NSWDs can result from improper surface washing or dust control methods, and how to detect and prevent NSWDs to ensure compliance with this Consent Decree and the 2014 Storm Water Permit.

  c.  <u>BMPs</u>. JELD-WEN shall train all designated employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility.

  d.  <u>Storm Water Sampling</u>. JELD-WEN shall designate an adequate number of employees necessary to collect storm water samples from each discharge location as required by this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

  e.  <u>Visual Observation Training</u>. JELD-WEN shall provide training to all designated employees at the Facility regarding visual observations pursuant to this Consent Decree and the 2014 Storm Water Permit.

2.  Training shall be provided by a QISP who is familiar with the requirements of this Consent Decree and the 2014 Storm Water Permit. The training shall be repeated annually, or as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the 2014 Storm Water Permit, and the Facility's SWPPP. All new designated staff shall receive this training before assuming unsupervised responsibilities for implementing the Facility's SWPPP or Monitoring Plan.

3.  JELD-WEN shall maintain training records to document compliance with this section, and shall provide Plaintiff with a copy of these records in its annual monitoring and reporting document described above.

1    **IV.**    <u>**COMPLIANCE MONITORING AND REPORTING**</u>

2      **A. Site Inspections.** Every year during the life of this Consent Decree, up to three (3) of Plaintiff's

3      representatives may conduct one (1) Wet Season site inspection and one (1) Dry Season (June 1 –

4      September 30) site inspection of the Facility. The site inspections shall occur during normal

5      business hours. Plaintiff shall provide JELD-WEN with twenty four (24) hours' notice

6      (weekends and holidays cannot be included in those 24 hours) prior to each Wet Season site

7      inspection, and forty-eight (48) hours' notice (weekends and holidays excluded) prior to each

8      Dry Season site inspection. Notice shall be provided by telephone and electronic mail to the

9      persons authorized to receive notices listed below, and shall state the names of all persons that

10      Plaintiff will bring to the inspection. Prior to conducting any inspection of the Facility, all

11      members of the inspection team shall report to the front office at the Facility, sign in as visitors,

12      and watch a safety video if so directed by Facility personnel. Any such inspections shall be

13      limited to the outside areas of the Facility, and access to any roof cannot be provided. All

14      inspectors shall be accompanied by a designated JELD-WEN employee at all times, and shall

15      comply with all safety rules for the Facility. Plaintiff and its inspectors acknowledge there is a

16      significant amount of vehicle traffic occurring at the Facility (including large trucks and fork

17      lifts), and the inspectors fully assume the risks inherent in their inspection activities that occur at

18      the Facility during working hours.

19      1.    During the site inspections, Plaintiff and its designated representatives shall be allowed the

20        opportunity to review the Facility's SWPPP(s), Monitoring Plan, and all other monitoring

21        records, reports, and sampling data for the Facility.

22      2.    During the site inspections, Plaintiff and its designated representatives may collect stormwater

23        samples at the Facility.

24      3.    During the site inspections, Plaintiff may take photographs and video recordings of the outside

25        areas of the Facility and of any other areas readily visible from the outside and from which

26        emissions that could affect storm water are occurring. If Plaintiff takes any photographs or

27        video recordings, Plaintiff shall provide JELD-WEN with the photographs and video within

28

DOCS 2926267.14

fourteen (14) days after completion of the inspection.

**B. Compliance Monitoring and Oversight**. JELD-WEN shall make a one-time payment of Five Thousand Dollars ($5,000) to fully compensate Plaintiff for the total costs of conducting the site inspections and monitoring JELD-WEN's compliance with this Consent Decree. Payment of the total amount shall be made within ten (10) business days of the Effective Date with check payable to "Coastal Environmental Rights Foundation."

**C. Action Plan Payments**. JELD-WEN shall pay Three Thousand Dollars ($3,000) each time a Discharge Action Plan is submitted to Plaintiff. Such Payments shall be submitted simultaneously with the submittal of the Action Plan. Payments shall be made payable to "Coastal Environmental Rights Foundation."

**D. JELD-WEN Document Production**. During the life of this Consent Decree, JELD-WEN shall copy Plaintiff on all documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality. Such reports and documents shall be sent to Plaintiff on the date they are sent to the agencies, counties, and/or municipalities. Any correspondence related to JELD-WEN's compliance with the 2014 Storm Water Permit or storm water quality received by JELD-WEN from any regulatory agency, state or local agency, county, or municipality shall be sent to Plaintiff within ten (10) days of receipt by JELD-WEN.

**V.      ENVIRONMENTAL PROJECT, REIMBURSEMENT OF LITIGATION FEES AND COSTS, AND STIPULATED PAYMENTS**

**A. Environmental Project**. To remediate the alleged environmental harms resulting from non-compliance with the 2014 Storm Water Permit and 1997 Storm Water Permit alleged in the Complaint, JELD-WEN agrees to make a single payment of Five Thousand Dollars ($5,000) to Environmental Center of San Diego to fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities on the Southern California Bight and its tributaries. The payment shall be made within ten (10) business days of the Effective Date payable to "Environmental Center of San Diego" and sent to: Coast Law

Group LLP, Attn: Marco Gonzalez, 1140 S. Coast Highway 101, Encinitas, CA 92124.

**B. Reimbursement of Attorneys' Fees and Costs**. JELD-WEN shall pay a total of Fifteen Thousand Dollars ($15,000) to Coast Law Group to fully reimburse CERF for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made within ten (10) business days of the Effective Date payable to "Coast Law Group, LLP" and delivered to Coast Law Group, LLP, Attn: Marco Gonzalez, 1140 South Coast Highway 101, Encinitas CA, 92024 via U.S. Mail.

**C. Stipulated Payment.** JELD-WEN shall make a remediation payment of One Thousand Five Hundred Dollars ($1,500) for each missed deadline included in this Consent Decree, but only one such payment is required where more than one deadline is due on the same day or where JELD-WEN misses a deadline by more than a day. JELD-WEN also shall pay Plaintiff a liquidated penalty of Five Hundred Dollars ($500) for each exceedance of a Numeric Limit identified in Table 1 prior to termination of this Consent Decree, which shall satisfy any potential claims for penalties Plaintiff might have at law for those exceedances. Payments for a missed deadline or for a Table 1 exceedance shall be made for the restoration or improvement (or both) of the watershed in the area affected by JELD-WEN's alleged discharges and shall be awarded to Environmental Center of San Diego. JELD-WEN agrees to make the stipulated payment within ten (10) business days of receiving notice from Plaintiff of a missed deadline or an exceedance. The payments shall be mailed via regular mail to Coast Law Group LLP, Attn: Marco Gonzalez, 1140 South Coast Highway 101, Encinitas, CA 92124.

**VI.    DISPUTE RESOLUTION AND RETENTION OF JURISDICTION**

**A. Continuing Jurisdiction**. This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for the Court to retain jurisdiction. The Court

1     shall have the power to enforce this Consent Decree with all available legal and equitable

2     remedies, including contempt.

3     **B. Meet and Confer**. A party to this Consent Decree shall invoke the dispute resolution

4     procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in

5     dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or

6     in person) in an attempt to resolve the dispute informally over a period of ten (10) days from

7     the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve

8     the dispute without court intervention.

9     **C. Dispute Resolution.** If the Settling Parties cannot resolve a dispute by the end of meet and

10     confer informal negotiations, the party initiating the dispute resolution provision may invoke

11     formal dispute resolution by filing a motion before the United States District Court for the

12     Southern District of California. The Settling Parties agree to request an expedited hearing

13     schedule on the motion if requested by any Settling Party.

14         **1.** <u>Burden of Proof</u>. In any dispute resolution proceeding, Defendant shall have the

15            burden of demonstrating its BMPs meet BAT/BCT standards as defined by the

16            2014 Storm Water Permit and implementing regulations and are adequate to

17            ensure Defendant's discharges do not cause or contribute to a violation of water

18            quality standards.

19         **2.** <u>Enforcement Fees and Costs</u>. Litigation costs and fees incurred in conducting a

20            meet and confer session(s) or otherwise addressing and/or resolving any dispute,

21            including an alleged breach of this Consent Decree, shall be awarded in

22            accordance with the standard established by § 505 of the Clean Water Act, 33

23            U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

24     **VII.**    **<u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>**

25     **A. Plaintiff's Release.** Upon the Effective Date of this Consent Decree, Plaintiff, on its own

26     behalf and on behalf of its current and former officers, directors, employees, and each of their

27     successors and assigns, and their agents, and other representatives covenants not to sue and

28

DOCS 2926267.14

releases all persons including, without limitation, JELD-WEN (and each of its direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims for penalties or other relief alleged in the Notice Letter and Complaint or that was otherwise eligible to be made by Plaintiff up to the Effective Date of this Consent Decree. Plaintiff waives California Civil Code § 1542 which states:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which is known by him or her must have materially affected his or her settlement with the debtor.**

Plaintiff understands and acknowledges the significance and consequence of such specific waiver of Section 1542, and hereby assumes full responsibility for any injuries, damages or losses that he or she may later incur from the alleged incident giving rise to this dispute and/or lawsuit.

**B. JELD-WEN's Release.** Upon the Effective Date of this Consent Decree, JELD-WEN, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, and other representatives releases Plaintiff (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and their agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Plaintiff's Notice Letter and Complaint up to the Effective Date.

**C.** Nothing in this Consent Decree limits or otherwise affects any Settling Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on

1    any other matter relating to JELD-WEN's compliance with the 2014 Storm Water Permit or

2    the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

3  **VIII.    MISCELLANEOUS PROVISIONS**

4    **A. No Admission of Liability**. Neither the negotiation, execution, or entry of this Consent

5        Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent

6        Decree shall constitute or be construed as a finding, adjudication, admission, or

7        acknowledgment of any fact, law, or liability, nor shall it be construed as an admission by

8        JELD-WEN of its violation of the 1997 Storm Water Permit, the 2014 Storm Water Permit, or

9        any law, rule, or regulation. JELD-WEN maintains and reserves all defenses it may have to

10       any alleged violations that may be raised in the future.

11    **B. Construction.** The language in all parts of this Consent Decree shall be construed according

12       to its plain and ordinary meaning, except as to those terms defined in the 2014 Storm Water

13       Permit, the Clean Water Act, or specifically herein.

14    **C. Choice of Law**. The laws of the United States shall govern this Consent Decree.

15    **D. Severability**. In the event that any provision, paragraph, section, or sentence of this Consent

16       Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall

17       not be adversely affected.

18    **E. Correspondence**. Unless specifically provided for in this Consent Decree, all notices required

19       herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S.

20       mail or electronic mail as follows:

21

22       If to Plaintiff CERF:

23       Coastal Environmental Rights Foundation
         Attn: Sara Kent

24       1140 South Coast Highway 101
         Encinitas, CA 92024

25       Email: sara@cerf.org

26

27       With Copy to:

28       Coast Law Group LLP

---

Consent Decree                        21                    Civil Case No. 3:17-cv-01811-LAB-KSC

DOCS 2926267.14

Attn: Marco Gonzalez
1140 South Coast Hwy 101
Encinitas, CA 92024
Email: marco@coastlawgroup.com

<u>If to JELD-WEN</u>:

Dwayne R. Arino
VP Global Environmental Affairs
JELD-WEN, Inc.
3250 Lakeport Blvd.
Klamath Falls, OR 97601
Email: darino@jeldwen.com

<u>With Copy to</u>:

John J. Lormon, Esq.
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200
San Diego, California 92101
Email: John.Lormon@procopio.com

1.   A notice shall be considered sent on the day it is placed in the U.S. mail or the day it is sent by electronic mail. A notice shall be deemed received three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or of addressees shall be communicated in the manner described above for giving notices.

**F.   Effect of Consent Decree**. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that JELD-WEN's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of JELD-WEN to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

**G.   Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or

facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

H. **Modification of the Consent Decree**. Except as provided in Section II.C, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

I. **Full Settlement**. This Consent Decree constitutes a full and final settlement of this matter.

J. **Integration Clause**. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

K. **Authority of Counsel**. The undersigned representatives for Plaintiff and JELD-WEN each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

L. **Authority of Parties**. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

M. The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

DOCS 2926267.14

1 APPROVED AS TO CONTENT

2

3 Dated: ___9/15/2017_____      By: _s/Sara Kent _____
                                         Sara Kent
4                                        Programs Director
                                         Coastal Environmental Rights Foundation
5

6

7 Dated: ___9/15/2017_____      By: _s/Andrew Rink_____
                                         Andrew Rink
8                                        Associate General Counsel
                                         JELD-WEN, Inc.
9

10 APPROVED AS TO FORM

11

12 Dated: _____9/15/2017_____      By: _s/Marco A. Gonzalez_____
                                       Marco A. Gonzalez
13                                     Coast Law Group LLP
                                       Attorneys for CERF
14

15

16 Dated: _____9/15/2017_____      By: _s/John J. Lormon_____
                                         John J. Lormon
17                                       Procopio
                                         Attorney for JELD-WEN
18

19 **IT IS SO ORDERED.**

20

21 Date: _____1/12/18_____

22                                    Hon. Karen S. Crawford
                                      United States Magistrate Judge
23                                    Southern District of California

24

25

26

27

28

Consent Decree                    24        Civil Case No. 3:17-cv-01811-LAB-KSC

DOCS 2926267.14